ESTATE OF WILLIAM L. NEVIN, DECEASED, FRANCES N. HOWE, ADMINISTRATRIX, D. B. N. C. T. A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15218. Promulgated July 20, 1948.

*C. Walter Randall, Jr., Esq.*, for the petitioner.
*William H. Best, Jr., Esq.*, for the respondent.

## OPINION.

LEECH, *Judge*: It is petitioner's contention that the payments to be made to the decedent and his wife under the contract of November 22, 1937, represented purely voluntary pension payments by John Wanamaker Philadelphia. We are asked to find upon the record that these payments were not made as a legal liability of the company under a contract under which the company had received a valid consideration for the payments it agreed to and did make, but that, on the other hand, such payments were made under a pension voluntarily awarded to the decedent because of his service to the company in past years.

If such conclusion of fact were sound, it could be argued that the value of the payments to be made to the decedent's widow after his death would not be includible in his gross estate under section 811 (c). G. C. M. 17817 (1 C. B. 1937, 281). See also, *Central Hanover Bank & Trust Co., Executor*, 40 B. T. A. 268, and *Dimock* v. *Corwin*, 19 Fed. Supp. 56.

Respondent argues that the payments in question were legal obligations of John Wanamaker Philadelphia assumed under the contract of November 22, 1937, and were not voluntary payments of a pension granted to the decedent by that company. He contends that the right to receive payments under this contract and to require their continuance to his wife after his death was acquired by the decedent by purchase for a valuable consideration, namely, his agreement to retire as managing trustee of the Rodman Wanamaker trust and as president and director of the three Wanamaker corporations. It is insisted that the decedent was under no obligation to resign his trusteeship, and could not have been required to do so, and that his agreement to resign, and thus relieve the company from the payment of his annual salary of $106,000, and to permit the trustees to appoint a successor was secured by a definite binding contract on the part of John Wanamaker Philadelphia to pay the decedent a specified sum of money each year for a term of 10 years, with the further provision, in case of his death before the expiration of that time, to continue the payments for the stated period to his widow.

Respondent argues that in such circumstances the payments are analogous to annuity payments under an annuity contract purchased by the decedent, in which he has designated a beneficiary to receive payments for the stated period after his death. Upon this premise it is urged that the commuted value as of the time of decedent's death of the payments to be made under the contract to his widow is includible in his gross estate under the rule announced in *Commissioner* v. *Clise*, 122 Fed. (2d) 998; certiorari denied, 315 U. S. 821; and *Mearkle's Estate* v. *Commissioner*, 129 Fed. (2d) 386.

It thus appears that the question is essentially one of fact, namely, whether the evidence shows the payments under the contract of November 22, 1937, were merely pension payments under a pension awarded the decedent by the corporation, or were payments exacted by the decedent from the corporation in consideration of his voluntary retirement and release of the corporation from salary payments to him of approximately twice the annual sum agreed upon.

The burden of proof, of course, is upon the petitioner. The record convinces us that the petitioner has failed to establish that the payments basing the dispute were made as a pension voluntarily awarded the decedent.

The very fact that the payments were made under a contract formally executed and legally binding upon the parties is difficult to reconcile with the voluntary awarding of a pension to a retiring employee. The contract itself specifically states that the payments agreed upon are in consideration of the decedent's agreement to retire from the lucrative positions which he then held. There is no evidence that impresses us in the record tending to fix the payments provided in the contract as intended to be pension payments. The testimony by one officer of the three corporations, who was also a fellow trustee of the decedent, that he considered the contract by John Wanamaker Philadelphia with decedent as one providing a pension, does not thus qualify. He testified that the Wanamaker corporations had no pension plan, but that it was their custom to provide for retiring employees and not to cut them adrift.

In this connection it may be noted that there is no testimony from Robert H. Montgomery, decedent's close friend and fellow trustee, who discussed the matter with the decedent as the representative of the Wanamaker corporations, negotiated with him the conditions of his retirement, and prepared the contract covering the agreement to retire.

The facts and circumstances surrounding the transaction lead to the conclusion that the obligation assumed by John Wanamaker Philadelphia under the contract to pay the decedent a specified amount for each of the following 10 years, with the provision that, in case of his death prior to that time, his widow surviving, the remaining payments would be continued to her, was one exacted by the decedent as the price to be paid in consideration of his resignation. The situation was not the usual one existing in the case of an old employee who could be relieved of office at any time at the option of his employer. Here the resignation of decedent could not have been forced. He was admittedly of clear mind and attending daily to the affairs of his office. His fellow trustees and the directors of the several corporations were in no position to notify the decedent that he was retired as of a certain date with a pension voluntarily awarded him. Decedent's fellow trustees and directors desired his resignation in the interests of the corporations, but there appears to be no doubt of the fact that they were in no position to force it. If they were to secure decedent's resignation, it was necessarily upon his terms, and it appears to us that the agreement embodied in the contract of November 22, 1937, was the decedent's price for his voluntary resignation.

We think that the situation here falls within the rule of *Commissioner* v. *Clise, supra*. There the decedent acquired, for a valuable consideration, the right to receive certain annual payments, to be continued to his wife after his death. His wife's right to receive such payments was contingent upon her surviving the decedent. His death

brought her enjoyment of the right into being. As the court said in the *Clise* case, quoting *Helvering* v. *Hallock*, 309 U. S. 106,

" * * * Section 302 (c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment. * * * "

We sustain the action of respondent on this issue.

The second issue is upon petitioner's claim to additional deductions from the gross estate as constituting income tax liabilities due from decedent at the time of his death in the sums of $6,722.35 for 1942 and $15,554 for 1943.

The record shows that for 1942 there was assessed an income tax liability of $26,889.38 against the decedent, of which he paid the first installment of $6,722.35.

Two months after his death the administratrix paid the second installment of this tax in the same amount, leaving an unpaid balance of $13,444.68. Thereafter, and before the estate tax return was filed, the Current Tax Payment Act forgave all of the taxes for 1942; consequently no payment was made upon the remaining balance of $13,444.68. The two payments already made of $6,722.35 each upon 1942 tax thereupon became subject to refund or credit upon 1943 tax. Whether these taxes for 1942 were made the subject of a claim for refund or reflected in the computation of the tax liability for 1943, we do not know, since the return for the later year is not in evidence. Upon these facts it certainly can not be found that decedent's estate is entitled to an additional deduction representing income taxes for 1942.

With respect to the deduction of $15,554 for 1943 taxes, it appears that the estate tax return reported a deduction of $14,349, this being the amount paid for the period January 1, 1943, to the date of decedent's death, April 13, 1943. However, the tax assessed upon the return filed was in the sum of $14,223.39 and an overpayment of $125.61 was refunded to the estate. Later, an additional assessment of $1,330.61 was made, together with interest of $272.47, which was paid by the estate. It is thus apparent that the petitioner is entitled to a deduction as a claim against the estate of the full amount of the tax assessed and paid for the period January 1 to April 13, 1943, this being the total of $14,223.39 and $1,330.61, or $15,554. As respondent in computing the deficiency, allowed a deduction for 1943 tax of only $13,598.16, petitioner is entitled to an additional deduction of $1,955.84.

*Decision will be entered under Rule 50.*