**HANNER v. GLENN, Collector of Internal Revenue.**

**Civ. A. No. 1621.**

United States District Court
W. D. Kentucky, at Louisville.
March 11, 1953.

Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., for plaintiff.

Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Henry L. Spencer, Sp. Assts. to the Atty. Gen., David C. Walls, U. S. Atty., Chas. F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The plaintiff, Sue F. Hanner, is the surviving widow and beneficiary under the will of her deceased husband Robert A. Hanner. She filed this action March 11, 1949 seeking to recover $1,651.87 deficiency in estate taxes assessed by the Commissioner of Internal Revenue and interest thereon in the amount of $140.23.

The Commissioner had determined that an amount of $10,831.88, paid to the plaintiff in her individual capacity as beneficiary under a deed of trust between Brown & Williamson Tobacco Corporation and the Guaranty Trust Company of New York, should have been included in the gross estate of the decedent in accordance with the provisions of Section 811(a), Section 811(c) 811(d) or Section 811(f) of the Internal Revenue Code.

Including the sum of $10,831.88 in the estate, the Commissioner assessed a tax of $1,651.87 and interest thereon of $140.23, making $1,792.10, which was paid by plaintiff as executrix on September 19, 1946.

On November 21, 1946, Sue F. Hanner, as executrix, filed a claim for refund of the deficiency assessment and interest and that claim was on March 17, 1947, in the manner provided by Statute, rejected.

Sue F. Hanner instituted this action against the Collector of Internal Revenue for Kentucky, to whom the deficiency assessment was paid.

There is no dispute with respect to the facts and the parties have filed a written stipulation, which in substance provides—

The decedent, Robert A. Hanner, died January 21, 1944 testate. By the terms of his will, his wife, Sue F. Hanner was devised all of his estate remaining after the payment of his debts and funeral expenses. The will was duly probated and Sue F. Hanner qualified, as executrix.

Robert A. Hanner was forty-six years of age at the time of his death and had been for some time, an employee of the Brown & Williamson Tobacco Corporation and was one of the employee-beneficiaries of a deed of trust between Brown & Williamson Tobacco Corporation and the Guaranty Trust Company of New York dated March 25, 1936 and amended January 13, 1939. The trust indenture, as amended, provided for a fund contributed entirely by the employer to which the employee-beneficiaries contributed nothing, the primary purpose of which was to provide additional compensation for the employee and the members of his immediate family, in the event of his death, for meritorious services acknowledged to have been rendered by a number of employees, including the decedent Hanner.

The benefits provided by the trust were made payable to the employee-beneficiary when he reached the age of sixty-one years or ceased to be an employee of the Brown & Williamson Tobacco Corporation, whichever occurred first. No part of the trust fund was payable to the employee-beneficiary unless and until one of the contingencies occurred—that is arriving at the age of sixty-one years or ceasing to be in the employ of the Company. When either of the events occurred, the trustee agreed to pay over to the employee his share in the trust fund and his portion of the accumulation in installment payments as provided in the deed of trust. It was further provided that in the event of the death of the employee-beneficiary prior to his having received the funds due him under the trust agreement, the remaining or undistributed principal or accumulated income shall be paid over and distributed to his widow and descendents at the time of his death in such portions as decedent-employee had by his will appointed—that provision of the trust indenture being as follows—

"* * * if any employee-beneficiary hereunder shall die prior to the time that all of the principal held for his particular benefit shall have been paid and distributed to him and his widow or any of his descendants shall survive him, then upon his death all rights of such employee hereunder shall cease and determine and thereupon such principal then held hereunder and the income therefrom shall from time to time be paid over, distributed and delivered to such of the widow and descendants of such deceased employee living at the time of his death and in such shares or parts to them respectively as he may by will appoint or in default of the exercise of this limited power then to those who would take from him under the Statute of Descent of the State of New York had he died intestate."

The death of Robert A. Hanner occurred fifteen years prior to his reaching the age of sixty-one years of age and while he was an employee of the Brown & Williamson Tobacco Corporation, and by his will he had exercised the limited power of appointment given to him by the terms of the trust indenture and had designated his wife, the plaintiff Sue F. Hanner, as the person to whom his share of the trust fund should be paid. The Trustee accordingly paid to Sue F. Hanner $10,831.88 and this amount paid to her individually was not included by her in her return of the gross estate of the deceased for tax purposes. This sum was determined by the Commissioner to be properly includable in the gross estate and his assessment was based thereon.

It is stipulated that the plaintiff complied with the requirements of the Internal Revenue Code with respect to the timely filing of her claim for refund. . ·

Her contentions now are that the decedent had no interest at the time of his death in the trust property requiring its value to be includable in his gross estate within the meaning of Section 811(a) of the Internal Revenue Code because Section 811(a) brings within the gross estate the value of decedent's interest in property at the time of his death and excludes an interest in property which terminated at death and which was contingent upon events which had not occurred; that the interest of the decedent was a mere expectancy (as distinguished from a vested interest) contingent upon either of two events, neither of which had occurred at the time of his death—that is he had not attained the age of sixty-one years and had not ceased to be an employee of the Corporation.

She also contends that decedent possessed only a limited testamentary power of appointment under Section 811(f) of the Internal Revenue Code,—which limited power of appointment,—that is the power to appoint within the limited class of surviving widow and descendants, constituted an exception under the terms of the statute.

The third contention was that the decedent had made no inter vivos transfer of the trust property taxable at his death within the contemplation of Section 811(c) and Section 811(d) of the Internal Revenue Code.

### Conclusions of Law

The pertinent sections of the Internal Revenue Code are as follows—

811. "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(c)' [as amended by Sec. 7(a) of the Act of October 25, 1949, c. 720, 63 Stat. 891] Transfers in contemplation of, or taking effect at death.

"To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, \*. \* \* intended to take effect in possession or enjoyment at or after his death. \* \*

"(d) Revocable transfers

*(1) Transfers After June 22, 1936.*

"To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

\* \* \* \* \* \*

"(f) [as amended by Act of June 28, 1951, c. 165, 65 Stat. 91, Sec. 2]

*"Powers of Appointment*

"(1) Property with respect to which decedent exercises a general power of appointment created on or before October 21, 1942. To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof.

"If before November 1, 1951, or within the time limited by paragraph (2) of section 403(d) of the Revenue Act of 1942, as amended, in cases to

which such paragraph is applicable, a general power of appointment created on or before October 21, 1942, shall have been partially released so that it is no longer a general power of appointment, the subsequent exercise of such power shall not be deemed to be the exercise of a general power of appointment.

"(2) *Powers created after October 21, 1942.*

"To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October, 21, 1942, or with respect to which the decedent has at any exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d). A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power.

"For the purposes of this paragraph (2) the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

26 U.S.C. 1946 ed. Supp. III, sec. 811.

The legal question which is determinative of the case is whether any one of sections 811(c), 811(d) or 811(f) of the Internal Revenue Code sustains the Commissioner's inclusion as a part of decedent's estate for estate tax purposes the fund of $8,831.87 paid to the plaintiff Sue F. Hanner by the trustee under the trust created by decedent's employer.

 The Government is not now contending that Section 811(c) of the Internal Revenue Code is applicable. Section 811(c) does not sustain the inclusion of the sum as part of decedent's estate because that section provides for a tax upon transfers, by a decedent. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604.

 While the transfer, in order to to be taxable, need not have been directly from decedent to plaintiff, the word " 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." Chase National Bank v. United States, supra, 278 U.S. at page 337, 49 S.Ct. at page 128.

Defendant's counsel, in their brief, assume that there was a transfer by the decedent and rely for support of this contention upon McKitterick v. Commissioner, 42 B.T.A. 130, Estate of Wilson v. Commissioner, 42 B.T.A. 1196, Kernochan v. United States, 29 F.Supp. 860, 89 Ct.Cl. 507, Estate of O'Shea v. Commissioner, 47 B.T.A. 646, 647 and Nevin v. Commissioner, 11 T.C. 59.

These cases are distinguishable on their facts from the case at bar. The McKitterick case involved pro rata payments of an annual bonus to decedent's estate, which had accrued during the partial year which decedent had worked before his death, which occurred on August 15. The executrix contended that since the bonus was not computed until after the end of the calendar year, decedent's death at any time before the date set for computing the amount payable would relieve the company of any legal liability to compute and pay any bonus. She argued that the payment of the bonus by the company to her was a gratuity and not taxable to decedent's estate. The Court rejected this argument and included the bonus in decedent's estate because the resolution by the Company's directors authorizing the bonus payment provided that the bonus payments were never a gratuity, but were a part of decedent's compensation.

which the Company was legally obligated to pay for services rendered by decedent up to the date of his death. Decedent's estate had a legally enforceable claim for the bonus against his corporate employer.

In the case at bar, the trust indenture expressly provides "if any employee-beneficiary hereunder shall die prior to the time that all of the principal held for his particular benefit shall have been paid and distributed to him and his widow or any of his descendants shall survive him, then upon his death all rights of such employee hereunder shall cease and determine and thereupon such principal then held hereunder and the income therefrom shall from time to time be paid over, distributed and delivered to such of the widow and descendants of such deceased employee living at the time of his death and in such shares or parts to them respectively as he may by will appoint or in default of this limited power of appointment then to those who would take from him under the Statute of Descent of the State of New York had he died intestate."

Upon decedent Hanner's death, his right to receive annuities ceased and determined and his estate had no claim to the trust fund.

The case is distinguishable from the McKitterick case, because in the latter McKitterick's estate had a "legally enforceable claim" to receive his bonus.

The trust fund in this case shows that Hanner's right to receive annuities died with him. Such interest as Hanner had was only contingent and was defeated by his death prior to his arriving at the age of sixty-one years and while still in the employment of the Brown & Williamson corporation.

The Wilson and Kernochan cases supra both involve pension plans providing that in the event of retirement or the separation from employment, the employee had a right to receive forthwith the funds standing to his credit, but the fund in those cases had been created out of deductions from employees' salaries and the employee had the right to designate *any* beneficiary. In contrast, Hanner did not make any contribution to the trust fund out of salary nor could

he appoint any beneficiary other than his widow or descendants.

The O'Shea case, supra, involved the same pension plan as those in the Wilson and Kernochan cases, but differs in that O'Shea by surviving to the time of retirement became the owner of his annuity. His exercise of an option to receive lesser payments to himself in exchange for the right to designate a beneficiary to receive payments on his death, distinguishes that case from the case here involved.

The Nevin case involved a pension payable to Nevin and upon his death, payments to his wife, all of which payments were created as a result of a bargain between Nevin and his employer. Nevin had surrendered to his employer certain rights, including a $106,000 per annum salary, in return for the pension plan, and the Court concluded that case was analogous to that in which the ordinary purchase of an annuity is involved.

In the case at bar the decedent Hanner made no contribution and his interest in the trust fund was a gratuitous benefit which his employer felt meritorious service had warranted—a reward beyond the obligations of his salary agreement.

The case of Estate of Saxton v. Commissioner, 12 T.C. 569, seems to be controlling. In that case decedent's employer, for the purpose of providing additional compensation to decedent and others, voluntarily created a trust to be held for ten years and then distributed to certain named employees, including Saxton. The trust indenture provided that on the death of the employee, prior to the expiration of the ten-year period, his share of the trust estate was to be immediately paid to the person appointed by the employee's will and failing such appointment, to his issue. Saxton died without having exercised his power of appointment and his share of the fund was paid to his children as his issue. The Court held the amount of such payments not to be includable in decedent's gross estate, under pertinent sections of the Code. The Commissioner contended "though the money was transferred directly from decedent's employer to decedent's two sons, it was in ef-

fect transferred by decedent himself. His employment along with that of other employees occasioned the creation of the trust fund; his continued services constituted the consideration for his employer's contributions thereto. These contributions, therefore, indirectly originated with decedent himself and constituted the necessary 'transfer' required by the statute." The Court rejected this contention, saying—

"If Harper & Brothers had been obligated by a contract with decedent to pay him additional compensation, or if decedent had asserted a claim for additional compensation, and the employer, by agreement with decedent, had satisfied this obligation or compounded this claim, by creating the trust and transferring to it the funds here in question, we might find merit in respondent's argument as addressed to that hypothesis. See Estate of William L. Nevin, 11 T. C. 59. Or, if the trust, while providing certain primary beneficial rights to decedent, provided that decedent should have the power to cut down those rights and thus create rights in his widow or children, and decedent exercised this power, we might well conclude that the exercise of this power amounted to a transfer by decedent. See Estate of William J. Higgs, 12 T.C. 280.

"In the instant case, however, there was no legal obligation upon Harper & Brothers to pay additional compensation to decedent and no claim asserted by decedent to additional compensation. Consequently, there was no agreement between the employer and decedent calling for the creation of the trust. Nor was any power granted by the trust or exercised by decedent under which decedent could, or did, carve out and transfer a part of his beneficial rights to his widow or issue. Nor can it be said that there was here a 'transfer of property procured through expenditures by the decedent with the purpose effected at his death, of having it pass to another.' See Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405. The most that can be said, in a realistic appraisal of the situation here present, is that the employer, under no compulsion or obligation to do so, decided to award additional compensation to decedent, and, with the knowledge and consent of decedent, decided to, and did, effectuate this award of additional compensation by creating the trust and transferring the property here involved, and by virtue of the trust and the inaction of decedent, decedent's issue became entitled upon the death of decedent to the payment of part of the trust corpus."

See also Higgs v. Commissioner, 3 Cir., 184 F.2d 427; Dimock v. Corwin, D.C., 19 F.Supp. 56 and Commissioner v. Twogood, 2 Cir., 194 F.2d 627.

### Conclusion

Section 811(d) does not sustain the inclusion of the sum in question as part of decedent's estate, because Section 811(d) and Section 811(c) created taxes only on transfers by a decedent.

Section 811(f) did not require inclusion of the sum in question in decedent's gross estate, because the provisions required inclusion in the estate of funds over which a decedent had a general power of appointment. The power of appointment created by decedent, by the trust indenture, is a limited power—limited to his right to appoint "such of the widow and descendants of such deceased employee living at the time of his death * * * as he may by will appoint."

Section 811(f), prior to the Amendment of 1951, exempts from the definition of taxable powers of appointment, a power to appoint within a class which does not include any others than the "spouse of the decedent, spouse of the creator of the power, descendants of the decedent or his spouse * * *."

It follows that the Commissioner was in error in including within the gross estate, the trust funds paid to the plaintiff Sue F. Hanner and she is entitled to a judgment as sought by her here.

Counsel for plaintiff will present an appropriate judgment in accordance with this conclusion, upon notice to counsel for defendant.