ESTATE OF HARRY FRIED, DECEASED, ETHEL FRIED, EXECUTRIX, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4505-67.    Filed April 22, 1970.

*Sidney S. Allen*, for the petitioner.
*Robert M. Pearl*, for the respondent.

**OPINION**

The major issue in this case is whether the estate is entitled to a marital deduction under section 2056, I.R.C. 1954,[1] in excess of the amount allowed by respondent. Both parties recognize that this issue depends in its entirety on whether the bequest by decedent to his wife of his residual estate is a terminable interest within the meaning of section 2056(b).[2] This, in turn, depends upon the construction of the decedent's will, particularly with reference to subparagraph (B) of the second paragraph thereof. The provision contained in this paragraph which is crucial to our decision is:

In the event that my said beloved wife * * * shall predecease me or shall die in the course of or as a direct result of the same accident, casualty or disaster as I or under such circumstances as make it impossible to determine which of us

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.
(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—
(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—
* * * * * * *
(3) INTEREST OF SPOUSE CONDITIONAL ON SURVIVAL FOR LIMITED PERIOD.—For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—
(A) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and
(B) such termination or failure does not in fact occur.

died first, or in the event that my said beloved wife survives me but dies before the probate of this my Last Will and Testament, then and in either of said events, I give, devise and bequeath the * * * remainder of my estate to my daughter * * *

Both parties recognize that the will is to be interpreted under the law of the State of New York. It is petitioner's contention that the only circumstance under which the residual estate would not go to decedent's spouse is the circumstance that both decedent and his spouse died as a result of the same accident, casualty, or disaster. Petitioner contends that for this reason the only condition that might have caused a termination of the bequest to decedent's spouse was her death as a result of a common disaster with the decedent, and for that reason the bequest is not to be considered an interest which will terminate or fail on the death of the spouse within the provision of section 2056(b)(3)(A). Petitioner relies for this interpretation of the will primarily on the case of *In re Bull's Estate*, 175 Misc. 197, 23 N.Y. S. 2d 5 (1940). The clause which was being interpreted in the case of *In re Bull's Estate*, stated:

In case my said husband shall not survive me or in case of our death simultaneously or if the order of our deaths cannot be determined or if my husband shall die in a common disaster with me or so nearly together with me that there shall not have been a reasonable time and opportunity to probate my said Last Will and Testament and this Codicil thereto and thereby formally to establish rights thereunder, then and in either of those events I hereby give, devise and bequeath all of my estate, * * * in accordance with the provisions of my said Last Will and Testament, dated February 13, 1929.

The facts in *In re Bull's Estate, supra*, were that the decedent died on July 26, 1939, and her husband died on November 8, 1939, both of natural causes. The persons who would have taken under decedent's will of February 13, 1929, contended that because of the death of decedent's husband so close after her death the paragraph which we have quoted operated to deprive him of his deceased wife's estate. The court, in construing the will, stated:

The court holds that the question must be determined solely on the text of the codicil and that none of the external facts commented upon in some of the briefs can be considered in determining issue. The particular text which requires construction is this: "or if my husband shall die in a common disaster with me or so nearly together with me that there shall not have been reasonable time and opportunity to probate my said last will and testament and this codicil thereto and thereby formally to establish rights thereunder." It is argued that this text defines a single condition which is centered upon the fact of a common disaster and contemplates the immediate death of both in such a disaster or the death of the testatrix therein and the death of the husband soon thereafter. It is argued on the contrary that the text contains two conditions and two central ideas. Concededly one of these is death of both in a common disaster. The other and separate idea is asserted to be the death of the husband so close to that of the testatrix

as to leave insufficient time "formally to establish rights" on the part of the husband by the probate of the will and codicil of the testatrix. * * *

The court holds that the condition stated in the quoted text is a single condition related only to the circumstances that would arise if fatal injuries occurred both to the deceased and her husband in a common disaster. * * * This conclusion of the court determines the issue and established the right of the husband of deceased to take her estate since he survived her.

Respondent points to the difference in the language of the will involved in *In re Bull's Estate, supra,* and in the instant case. The same distinction which respondent points out has been made by the Surrogate's Court, New York County, in *In re Johnston's Estate,* 186 Misc. 540, 64 N.Y. S. 2d 543 (1945). This case involved a provision in a husband's will which had been executed as a joint, mutual, and reciprocal will with his wife, each of the duplicate originals being signed by the husband and wife and subscribed to by the same subscribing witnesses. The husband died and 2 months after his death his will was delivered by his widow to attorneys for probate. These attorneys were attempting to locate the husband's next of kin until the widow's death less than 3 months after the death of her husband. The particular paragraph of the will under consideration was as follows:

And we further provide that in the event of both of us, at the occurence [sic] of an accident or otherwise, leaving this life at the same time, or the death of one of us and the death of the survivor before the due legal probate of this last will and testament has been accomplished, after all debts and expenses are paid as above contemplated, We give, devise and bequeath all Our property, whatsoever, real, personal and mixed and wheresoever the same may be situate * * * to Our friend, Earle H. Balch * * *

The next of kin of the widow in *In re Johnston's Estate, supra,* contended, relying on certain cases, among them *In re Bull's Estate, supra* (23 N.Y. S. 2d 5), that this will should be construed as investing the widow with the entire estate. They contended that the clause in the will left the entire estate to the widow except for the one event of the husband and wife dying as a result of a common disaster. The court held otherwise stating (64 N.Y. S. 2d at 546):

I find no intent in the language of the articles under construction to make the death of the survivor from a common disaster the exclusive condition for the alternative designation of Mr. Balch as sole legatee, and as executor. The contrary intent is clearly evidenced by the opening clause of the two articles: "And We further provide that in the event of both of us at the occurence [sic] of an accident or *otherwise,* leaving this life at the same time, or the death of one of us and the death of the survivor before the due legal probate of this last will and testament has been accomplished, * * *." (Italics mine.) It should be noted that all of the conditions, including the death of the survivor, are closely located and are contained in a single sentence. The phrase "at the occurence of an accident or otherwise" was intended to apply not only to simultaneous deaths from an accident or catastrophe, but also from natural causes. That same phrase likewise applied to the death of the spouse first dying and the death of the survivor. The use

of the disjunctive "or otherwise" clearly speaks of successive deaths from any cause whatsoever—natural as well as accidental. The conditions in the will must be construed as if written as follows: "In the event of the simultaneous deaths of both of us or the death of one of us and the death of the survivor as a result of a common accident or from natural causes before the due probate of this will, we give all our property to Earle H. Balch." The next of kin here would have the Surrogate disregard the word "or otherwise" by striking them from the will. The disjunctive "or" must be given full significance.

The court stated that the case of *In re Bull's Estate*, 175 Misc. 197, 23 N.Y. S. 2d 5, was distinguishable. The language in the will of the decedent in the instant case is quite comparable to the language as paraphrased by the court in *In re Johnston's Estate, supra*. The will here involved contains the provision that should decedent's wife predecease him or die in the course of or as a direct result of the same accident or under such circumstances as to make it impossible to determine which of them died first, followed by "or in the event that my said beloved wife survives me but dies before the probate of this my Last Will and Testament." The clear intent as expressed by this language is that one circumstance under which the residuary estate will pass to decedent's daughter instead of to his widow is should decedent's wife die in the course of or as the result of a mutual accident or under circumstances as to make it impossible to tell which died first, and another circumstance under which the residual estate would pass to decedent's daughter is should his wife survive him but die before the probate of the will.

The scrivener of the will, decedent's son-in-law, testified at the trial, that when he drafted the will for decedent he told decedent that clause B of the second paragraph was a common-disaster clause. He further testified that the decedent read the will before he executed it. There is substantial argument between the parties as to whether the testimony of the scrivener as to a statement to decedent should have been admitted. Whether this testimony was properly admissible, we need not decide since in our view the language of the will is clear that it provided that the residual estate go to decedent's daughter if his wife died before the probate of the will. In our view the will shows an intent on the part of decedent to have the estate go directly to his daughter in the event his wife died before probate of the will, and therefore whether a statement by the scrivener to decedent would have any bearing on showing intent need not be considered. Where the provisions of a will are clear and unambiguous, external factors are not to be considered in construing that will under New York law. *In re Bull's Estate, supra*, and *In re Johnston's Estate, supra*.

Petitioner further contends that his position that the language here in issue should be interpreted as applying only to death from a mutual disaster is supported by *Bland* v. *United States*, an unreported case

(N.D. Ala. 1965, 17 A.F.T.R. 2d 1363, 66–1 U.S.T.C. par. 12362). In that case, District Judge Lynne removed the issue of whether the estate was entitled to the marital deduction from the jury and held that considering the whole will the estate was entitled to the marital deduction. The provisions of the will which were being interpreted included the following:

It is here expressly made and provided in this will that if my said wife, Elsa Hartung Bland, and I are killed or die at or near the same time or if she dies before this will is probated, or if she dies within thirty days after my death, it is expressly made and provided that all the part willed, devised, and bequeathed to her shall go to ——— [decedent's brother and sisters] * * *

* * * Also, I here advise and suggest to my wife, as Executrix, and my nephew, as Executor, to immediately file this will for probation as soon after my death as practicable.

The court in that case held that reading the will as a whole showed an intention that one-half of decedent's estate was to go to his surviving spouse if she did not die within 30 days after his death. In so holding the court stated:

The Supreme Court of Alabama has said that the intention of the testator is always the pole star in the construction of wills and the Cardinal rule is to ascertain the intention of the testator and give it effect if not prohibited by law.

In arriving at that intention the Court should consider the instrument as a whole and not merely to take one statement in the will and say that that is the controlling statement. I have read this will in its entirety several times. It is quite clear to me that it was the intention of Earney Bland that one-half of his adjusted gross estate should go to his surviving widow in fee simple if she did not die within thirty days after his death. It is buttressed by the explanatory statement that is contained in paragraph 3 in which he elaborated on his intentions and further confirmed by the direct content in paragraph 13 of his will that, "Also, I here advise and suggest to my wife, as Executrix, and my nephew, as Executor, to immediately file this will for probation as soon after my death as practicable."

It is quite obvious that he expected, intended his will be filed certainly within thirty days after his death.

The court in *Bland* v. *United States, supra*, did not hold that the provision was for the property not to pass to the wife only in case she and her husband died in a mutual disaster but rather held that properly interpreted the will provided that the widow not take if she died within 30 days after her husband's death. That the *Bland* case was not intended to allow a marital deduction for amounts left to a widow by a will that clearly provided for the widow not to take in the event she died prior to the probate of the will is shown by the case of *Silvey* v. *United States*, 265 F. Supp. 235 (N.D. Ala. 1966), also decided by Chief Judge Lynne. The provisions of the will under consideration in the *Silvey* case were as follows:

ITEM THREE: *Should she survive me to the date of the probate of this will*, I devise and bequeath to my wife, Willie Warren Silvey, all of my property, both

real and personal, subject, however, to the direction and charge contained in Item Two.

ITEM FOUR: *Should my wife not survive to the date of the probate of this will,* I bequeath * * * [the residue of the estate] to my next of kin surviving me at the date of the probate of this will.

The court held in the *Silvey* case that the estate was not entitled to the marital deduction stating as follows:

Clearly such interest does not fit into the exception contained in section 2056 (b) (3). [footnote omitted] According to the terms of the will, Mrs. Silvey's death prior to the probate of the will would have terminated the interest bequeathed to her. Since the will could have been filed for probate within a period of five years from section symbol the date of the testator's death, Code of Ala., tit. 61, § 34 (Recompiled 1958), there existed at the time of his death a possible contingency that Mrs. Silvey might survive the decedent by more than six months and die thereafter before the will was probated. This possible contingency defeats the exception. Frederick v. Commissioner, decided April 20, 1962 (21 T.C.M. 480, 483).

The Memorandum Opinion (*Estate of William David Frederick*, T. C. Memo. 1962–89) referred to in *Silvey* v. *United States, supra,* is relied on by respondent in this case. That Memorandum Opinion involved a provision in a will that if decedent's wife did not survive him or if her death and his should happen in circumstances to make it impossible to determine the survivor, or in the event the wife did survive but died during the period of probation of his will, the property was left to one of the testator's children. It was pointed out that under the Code of Montana, probation of the will could take a period in excess of 6 months.

The case most nearly comparable to the instant case which has come to our attention is *Hansen* v. *Vinal,* 413 F. 2d 882 (C.A. 8, 1969). That case involved a testator among whose assets were included real estate located in Nevada and Colorado. His will provided:

2. The first to die does hereby give, devise and bequeath unto the survivor all of his or her property of every kind and nature, both real and personal, to be the absolute property of such survivor for all intents and purposes.

\* \* \* \* \* \* \*

4. In the event that we the joint makers of his will should be taken from this life at or about the same time, or in the event the survivor should not live long enough to probate the will of the first to die, then and in that event, we the joint makers hereof make the following disposition of all our joint and separate property.

The court upheld the Commissioner's contention that the estate was not entitled to the marital deduction stating (413 F. 2d at 885–886):

The trial court found that while the event of probate might occur within six months of the decedents' death, it need not necessarily occur within six months, and, therefore, the grant failed to qualify for the marital deduction allowed by Section 2056.

\* \* \* \* \* \* \*

While the nature of the interest passed is determined by state law, [footnote omitted] and while the applicable state laws favor early and indefeasible vesting of estates, each state recognizes the validity of an estate subject to a condition. [footnote omitted] A condition was imposed here—that the survivor live long enough to probate the will of the first to die. This condition can only be fulfilled by a judicial act—a determination by the proper court that the instrument offered is the validly executed last will and testament of the deceased. [footnote omitted]

   *      *      *      *      *      *      *

In our view, the trial court correctly concluded that the condition was not violative of state public policy nor the testator's intent.

The statutory law of Nebraska requires that the will of a deceased person be filed, by the custodian or executor of the will within thirty days of the testator's death or within thirty days after a person learns he has been named executor if he obtains such knowledge after the testator's death, under pain of criminal liability. Revised Statutes of Nebraska, 1943, Reissue 1964, sections 30–213–216. [footnote omitted] We must presume that these laws will be complied with and that the instrument will be delivered to the court. When this has been done, the court will make a prompt judicial determination as to whether or not the instruments is the last will and testament of the deceased.

The only circumstance which could reasonably be expected to delay or prevent the indefeasible vesting is a contest of the will—an event that can and does occur whether a devise is subject to a condition or not. [3]

The appellant in *Hansen* v. *Vinal, supra,* also contended that the clause in the will should be interpreted to place as the only condition of the property not passing to the wife her death in a mutual disaster with her husband. The court held that the provision of the will clearly referred to two separate conditions.

Since we view the will in the instant case as providing that the residuary estate passes to the testator's daughter if his wife dies before probate of the will, the interest left to decedent's wife was a terminable interest if under New York law, as under Alabama, Nevada, Montana, and Colorado law, the probate of a will may take more than 6 months. In the case of *In re Will of Wool,* 57 Misc. 2d 757, 293 N.Y. S. 2d 678 (1968), the Surrogate's Court of Nassau County pointed out that whether or not a will would be probated was a determination to be made by the Surrogate. The Surrogate's Court in *In re Johnston's Estate, supra,* in discussing the second contention of one of the parties therein that a delay of 3 months without offering a will for probate

---

[3] We recognize that under the law of New York real estate might be considered to pass immediately to the widow. See *Estate of Horton* v. *Commissioner,* 388 F. 2d 51 (C.A. 2, 1967), reversing 47 T.C. 641, holding that real estate vested in the heir under New York law immediately upon a decedent's death and therefore even though the estate was not entitled to a marital deduction with respect to personal property left under a will providing that should the testator's wife die before the residuary estate "shall have been distributed" to her, it was entitled to such a deduction with respect to the real property. In the instant case no real property was in the estate. Hereafter in this opinion we discuss the New York law as to the time which may elapse before probate of a will.

should be construed to be more than "due" time, stated (64 N.Y. S. 2d at 547):

There is no fixed statutory period when a will is required to be filed for probate. Nor could there be any such fixed period imposed by judicial rule because what is a due time, necessarily, depends upon the special circumstances of each estate.

As pointed out in *In re Will of Wool, supra,* when an instrument purporting to be a will has been offered for probate, it may be objected to and a hearing be necessary for the Surrogate to determine whether it will be admitted to probate. That a time of over 6 months can pass between the time a will is offered for probate and is admitted to probate is shown by the facts in the *Wool* case where the offer of the will for probate had been made more than 6 months prior to the decision which was there being rendered with respect to whether to probate the will.

Section 213, N.Y. Civ. Prac. Law and Rules (McKinney 1963), at page 242, provides in part as follows:

The following actions must be commenced within six years:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

7. an action to establish a will; where the will has been lost, concealed or destroyed, the time within which the action must be commenced shall be computed from the time when the plaintiff or his predecessor in interest discovered the loss, concealment or destruction, or could with reasonable diligence have discovered it; &ast; &ast; &ast;

It would therefore appear that under New York law a will could be offered for probate more than 6 months after a testator's death, and it is clear that even if offered for probate within 6 months after the testator's death more than 6 months could expire before its admission for probate. We therefore hold that the bequest of the residual estate to decedent's wife did not come within the exception provided by section 2056(b)(3), and therefore does not form the basis for a marital deduction.

It is respondent's position that the $5,000 payable to decedent's widow under his contract with Brake Laboratories, Inc., is includable in decedent's estate under section 2037.[4]

---

[4] SEC. 2037. TRANSFERS TAKING EFFECT AT DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time after September 7, 1916, made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, if—

(1) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent, and

(2) the decedent has retained a reversionary interest in the property (but in the case of a transfer made before October 8, 1949, only if such reversionary interest arose by the express terms of the instrument of transfer), and the value of such reversionary interest immediately before the death of the decedent exceeds 5 percent of the value of such property.

Petitioner takes the position that the payment is not includable in decedent's estate since the decedent did not have a transferable property interest and therefore did not make a transfer of any interest in property within the meaning of section 2037.

Respondent cites and relies on *Worthen* v. *United States*, 192 F. Supp. 727 (D. Mass. 1961), which involved an agreement by the corporation by which the decedent in that case was employed to pay to the employee's widow if the employee died while in the employ of, or after having retired from employment by, the company and if he left no widow to his children, or if no children to his brothers and sisters, a specified amount. The Court held that the amount was includable in the decedent's gross estate as a transfer taking effect at death. In that case the court stated the Government's argument as follows (192 F. Supp. at 733):

It argues that Stone had a valuable contract right, conceded by plaintiffs to be enforceable against the corporation, to have a year's basic salary paid to his widow, and that this was a right of the same type which was held to constitute property within the meaning of § 811(a) in Estate of Garber v. Commissioner of Internal Revenue, 3 Cir. 271 F. 2d 97; Goodman v. Granger, 3 Cir., 243 F. 2d 264; Beaver Trust Co. v. United States, D.C., 184 F. Supp. 553, and Wolf's Estate v. Commissioner of Internal Revenue, 29 T.C. 441, reversed on other grounds, 3 Cir., 264 F. 2d 82. These cases hold that death benefits are includable in the gross estate when they are derived from funds which represent deferred compensation to the decedent, or granted under plans which explicitly gave the decedent direct contractual rights in the funds. * * *

The court then pointed out that even though there was no specific money or funds transferred by the decedent, Stone, to the corporation, and for this reason there was no transfer of an interest in property owned by the decedent at the date of his death as required by section 811(a), I.R.C. 1939, realistically the corporation was motivated in entering into the contract by its desire to secure for itself the continuance of Stone's services so that in reality Stone's future services were the consideration for which the promise of payment was made and therefore the payments transferred were properly includable in his estate under section 811(c)(3), I.R.C. 1939.[5]

A number of other cases have held payments by corporations to a decedent's widow pursuant to an agreement with the decedent to be includable in the decedent's gross estate under section 811(c), I.R.C. 1939, where there was evidence of consideration passing from the decedent to the corporation in return for the agreement. In *Estate of William L. Nevin*, 11 T.C. 59 (1948), we held an agreement between the decedent whose estate was involved in that case and his employer

---

[5] Sec. 811(c)(3), I.R.C. 1939, as in effect at the date of the death of the decedent in *Worthen* v. *United States*, 192 F. Supp. 727 (D. Mass. 1961), did not require the retention by the decedent of a reversionary interest as does sec. 2037, I.R.C. 1954. However, the provisions with respect to transfer were approximately the same.

to make certain payments to the decedent for a period of 10 years, or if he died during the 10-year period to continue the payment to his widow, to cause the commuted value of the payments to be made to the widow to be includable in the decedent's gross estate under section 811 (c), I.R.C. 1939, as a transfer taking effect at death. In that case the decedent had agreed, in return for the contract entered into, to retire from his position with the company. We held that the decedent's agreement to retire from a position that he could not have been forced to retire from was consideration for the contract to make the payment both to the decedent and to the decedent's widow. We stated (11 T.C. at 65):

> We think that the situation here falls within the rule of *Commissioner* v. *Clise, supra,* [122 F. 2d 998]. There the decedent acquired, for a valuable consideration, the right to receive certain annual payments, to be continued to his wife after his death. His wife's right to receive such payments was contingent upon her surviving the decedent. His death brought her enjoyment of the right into being. As the court said in the *Clise case,* quoting *Helvering* v. *Hallock,* 309 U.S. 106.
>
> "* * * Section 302(c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment. * * *"

Unquestionably in the instant case there was consideration passing from the decedent to Brake Laboratories, Inc., since the agreement for the payment to decedent's widow was an overall part of the agreement between decedent, the other owner of stock in Brake Laboratories, Inc., and the corporation with respect to their respective interests in the business and the assets thereof. We have quoted in detail from the contract which defined the consideration each partner was to receive in return for the transfer of his partnership assets to the corporation. The corporation was a party to the contract much of which dealt with the payments to the estate of the deceased former partner stockholder. From reading the contract as a whole we conclude that part of the consideration for the formation of the corporation by the transfer to it of the partnership assets was the lifetime employment at equal salaries of each former partner even though such partner was unable to perform his duties because of illness or incapacity and the payment at the death of each former partner to his widow or legal representative of $5,000.[6]

---

[6] Since the same paragraph of the agreement that provides for the death payment also provides for the continuation of the salaries to the stockholder-officers of the corporation in the case of illness or incapacity, it would appear that the amount might be includable in decedent's gross estate under sec. 2039 as that section has been interpreted in a number of cases. See *Estate of Edward H. Wadewitz,* 39 T.C. 925 (1963), affd. 339 F. 2d 980 (C.A. 7, 1964); *All* v. *McCobb,* 321 F. 2d 633 (C.A. 2, 1963); and *Bahen's Estate* v. *United States,* 305 F. 2d 827 (Ct. Cl. 1962); but compare *Kramer* v. *United States,* 406 F. 2d 1363 (Ct. Cl. 1969), where the payment to be made to the employee should he become disabled was for consulting services and *Estate of Firmin D. Fusz,* 46 T.C. 214 (1966).

There is nothing in this record to show the value of the partnership assets transferred to the corporation. The contract sets the value of the stock of each partner at $15,000 and provides for the right of the corporation to purchase the stock for that price and for insurance on the life of each stockholder to facilitate the purchase. The contract is somewhat ambiguous as to whether the corporation is required to purchase the stock but is clear that it is required to pay to a deceased stockholder's widow or legal representative an amount of $5,000. The agreement of the corporation to pay the amount of $5,000 to the widow or legal representative of a deceased stockholder appears to be an enforceable obligation of the corporation. The agreement is part of the consideration of the transfer to the corporation by each of the two former partners of the partnership assets. The facts in this case are comparable to a situation in which an individual would each month pay in to his corporate employer a portion of his salary in return for the corporation agreeing to pay an amount to his widow upon his death.

*Rosenberg* v. *United States*, 309 F. 2d 724 (C.A. 7, 1962), involved an issue of whether an amount received by a widow under a pension trust plan was a transfer under section 811(a), I.R.C. 1939, of property in which the decedent had an "interest * * * at the time of his death." In the instant case decedent personally as distinguished from his personal representative after his death, had no interest in the $5,000 at the time of his death because the obligation to pay the $5,000 was in return for a transfer of property to the corporation by decedent prior to his death. As we understand section 2037, it is concerned only with interests in property transferred by a decedent prior to his death and would not be the section applicable to property in which a decedent personally still had an interest at the date of his death. Nevertheless, the following statements contained in *Rosenberg* v. *United States*, *supra* at 727, are equally applicable to what may constitute a "transfer" under section 2037 as under section 811(a), I.R.C. 1939, which is comparable to section 2033, I.R.C. 1954:

The fact that the trustee is here utilized as an instrument in effecting a transfer is of no import. In Chase National Bank of City of New York v. United States, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405, it is pointed out:

"Obviously, the word 'transfer' in the statute, * * * cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

And in Lehman v. Commission, 2 Cir., 109 F. 2d 99, 100, it was stated:

"While section 302(d) [Revenue Act of 1926] speaks of a decedent having made a transfer of property * * *, it clearly covers a case where the decedent

by paying a *quid pro quo* has caused another to make a transfer of property * * *." (Emphasis supplied.)

This Court has expressly recognized that a decedent's services may constitute the *quid pro quo* for a transfer to his widow. Simpson v. United States, 7 Cir., 261 F.2d 497, 501. * * *

In the instant case the "*quid pro quo*" for the corporation transferring $5,000 to decedent's widow or legal representative was decedent's transfer of his partnership assets to the corporation and becoming an officer and director of the corporation.

In *Kramer* v. *United States*, 406 F. 2d 1363 ('Ct. Cl. 1969), the court held that because the decedent had no right to receive annuity payments during his lifetime, amounts to be paid to his wife after his death were not includable in his gross estate under section 2039, I.R.C. 1954. The court then discussed the inclusion under other sections but not section 2037 since the Government made no contention in that case that that section applied.[7] In discussing the applicability of certain other sections which also require a transfer the court stated (406 F. 2d at 1369) :

Both provisions require a transfer by the decedent. In Worthen v. United States, 192 F. Supp 727 (D.Mass. 1961) a case decided under similar sections of the 1939 Code, the court found that the decedent's promise of future employment provided the consideration for the promise of payment of post-death benefits by the employer and that the arrangement was in substance a transfer to the one who would benefit from the payment. Other cases have found a transfer in a similar manner. Davis v. Commissioner, 27 T.C. 378 (1956) ; Estate of Higgs v. Commissioner, 12 T.C. 280 (1949), rev'd on other grounds, 184 F. 2d 427 (3rd Cir. 1950). * * *

In *Adeline S. Davis*, 27 T.C. 378 (1956), referred to in the *Kramer* case, we held the commuted value of the wife's right to receive a continued annuity after the death of her husband who was the prime beneficiary under an insurance contract procured for him by his employer to be includable in the deceased husband's estate. In our view where, as here, there is consideration furnished by a decedent for the agreement of his employer to pay death benefits to the wife or other beneficiaries, the amount paid to the wife is by transfer from the decedent. This is in accordance with the recognition in a number of cases that "transfer" within the meaning of section 2037 includes the procurement for valuable consideration by the decedent of the transfer of property to his beneficiary by another. See *Hanner* v. *Glenn*, 111 F. Supp 52 (W.D. Ky. 1953), and the cases there cited, affd. 212 F. 2d 483 ('C.A.6, 1954).

Since under the provision of the contract if there was no widow, the payments were to be paid to the "legal representative of the

---

[7] Apparently, no such contention was made because there was not in that case any reversionary interest in the decedent employee under the agreement.

deceased," we conclude that there was the possibility that the property might return to the decedent's estate and therefore the reversionary interest provision of section 2037(b) is met. Our findings show that the decedent was 3 years younger than his wife. Under section 20.2037–1(c) (3), Estate Tax Regs.,[8] the reversionary interest is to be computed immediately before the decedent's death without regard to the fact of the decedent's death. Under this section and section 20.2031–7(f), Estate Tax Regs., it would appear that decedent's reversionary interest exceeded 5 percent. The burden of proof that there is not a 5-percent reversionary interest is upon petitioner. Petitioner apparently does not contend that there is not a 5-percent reversionary interest, but merely contends that since the payment was voluntary by the corporation there was no interest transferred by decedent. It might here be noted that petitioner has not questioned respondent's valuation of the payment if it is includable in the estate. We, therefore, sustain respondent's determination.

The next issue involves the inclusion in decedent's gross estate of the value of an automobile which was paid for with his funds and registered in the name of Brake Laboratories, Inc. Petitioner argues that the automobile was actually the property of the corporation and that the funds which decedent advanced to purchase the automobile were a loan by decedent to the corporation which has never been repaid. Apparently, though it is not unmistakably clear from the record, the automobile was for the decedent's use. The corporation transferred the automobile to decedent's widow after decedent's death. Neither the value of the automobile, nor the value of the corporate indebtedness to decedent, was included in decedent's gross estate. One or the other should have been included. The burden of proof to show error in respondent's determination is on petitioner, and petitioner has failed to sustain that burden with respect to the inclusion in decedent's gross estate of the value of the 1963 Chrysler automobile.

Other than the concession of respondent with respect to the pay-

---

[8] Estate Tax Regs., sec. 20.2037–1(c) (3)

(3) For purposes of this section, the value of the decedent's reversionary interest is computed as of the moment immediately before his death, without regard to whether or not the executor elects the alternate valuation method under section 2032 and without regard to the fact of the decedent's death. The value is ascertained in accordance with recognized valuation principles for determining the value for estate tax purposes of future or conditional interests in property. (See §§ 20.2031–1, 20.2031–7, and 20.2031–9.) For example, if the decedent's reversionary interest was subject to an outstanding life estate in his wife, his interest is valued according to the actuarial rules set forth in § 20.2031–7. On the other hand, if the decedent's reversionary interest was contingent on the death of his wife without issue surviving and if it cannot be shown that his wife is incapable of having issue (so that his interest is not subject to valuation according to the actuarial rules in § 20.2031–7), his interest is valued according to the general rules set forth in § 20.2031–1. A possibility that the decedent may be able to dispose of property under certain conditions is considered to have the same value as a right of the decedent to the return of the property under those same conditions.

ment of the balance of decedent's 1962 income tax and a part of his 1963 estimated tax, there is no evidence in the record to show to what extent, if any, the $174.32 claimed as an indebtedness for taxes was an indebtedness of the estate. Again, except to the extent that respondent has conceded the deductibility of these taxes, we sustain respondent because of petitioner's failure to show error in his determination. It may be that petitioner intended the stipulation to be also a concession that the balance of these taxes was not deductible. However, there is some argument in petitioner's brief with respect to this claimed deduction, and, therefore, we consider it necessary to decide this issue. We hold that an indebtedness of $125.44 for taxes due is properly deductible by the estate and the balance of such claimed deduction properly disallowed.

The next issue is whether the U.S. Treasury bonds of a par value of $3,000 owned by decedent at the date of his death should be included in his gross estate at that value since they could have been used to pay estate taxes or whether they are includable at their fair market value which is approximately $281 less than their par value. Petitioner's only argument with respect to the bonds is that there is no estate tax due and therefore the bonds could not be used to pay estate tax. Under respondent's determination there is estate tax due and it is apparent that under our decision in this case there will be estate tax due in excess of $3,000. We therefore hold that respondent correctly valued the bonds at their par value. *Bankers Trust Co.* v. *United States*, 284 F. 2d 537 (C.A. 2, 1960).

The final issue is whether decedent had an indebtedness at the date of his death for 3 months' rent on his apartment, so that the estate is entitled to a deduction for the 3 months' rent in computing the amount of the taxable estate. This issue is purely factual. Decedent did not have a written lease on the apartment at the date of his death. Petitioner's sole argument with respect to this issue is the following statement contained in its original brief:

It is axiomatic that where as here, the decedent was obligated by a lease contract to pay rent for the apartment in which he lived, that the rent payable for the balance of his lease is a debt of the estate and properly deductible as such.

The evidence shows that decedent had a lease on his apartment and the term of the lease entered into had expired at the time of his death. The evidence further shows that the apartment was subject to the rent control laws of the City of New York. At the trial petitioner's counsel argued that even though the lease had expired some years before decedent's death, by operation of the rent control law it was renewed from year to year on an annual basis and therefore the

decedent was committed for rent for 3 months after the date of his death. Petitioner's counsel stated that although the lease had long since expired, when it was originally entered into in 1943, its terminal date was October and therefore under the rent control law it was renewed each year to October. Petitioner does not cite any section of the rent control law that provides for renewal of a lease on an annual basis nor has our attention otherwise come to any such provision of law. We therefore sustain respondent in his disallowance of the claimed deduction of $237.27.

Reviewed by the Court.

*Decision will be entered under Rule 50.*