**In re ESTATE of Harry FRIED, Deceased.**

**Ethel FRIED, Executrix, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 837, Docket 71–1015.**

United States Court of Appeals, Second Circuit.

Argued June 1, 1971.

Decided July 13, 1971.

---

Sidney S. Allen, New York City, for appellant.

Carleton D. Powell, Atty., Tax Div. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before CLARK,* Associate Justice, SMITH, Circuit Judge, and ZAVATT,** District Judge.

---

\* Retired Associate Justice of the Supreme Court, sitting by designation.

\*\* Senior District Judge for the Eastern District of New York, sitting by designation.

SMITH, Circuit Judge:

This is an appeal from a decision of the Tax Court[1] (Irene F. Scott, Judge), upholding the assessment of a deficiency of $8,154.88 in federal estate taxes of the estate of Harry Fried, who died testate on July 20, 1963. We find no error and affirm the judgment.

The first issue raised attacks the disallowance of a claimed marital deduction. Decedent's last will and testament provided that the entire estate, after debts and expenses, was to go to his wife. It further provided, however, that:

> In the event that my said beloved wife * * * shall predecease me or shall die in the course of or as a direct result of the same accident, casualty or disaster as I or under such circumstances as make it impossible to determine which of us died first, or in the event that my said beloved wife survives me but dies before the probate of this my Last Will and Testament, then * * * I give * * * the whole of said rest, residue and remainder of my estate to my daughter * * if she survives me, or if she shall have predeceased me, then the whole thereof to her issue per stirpes.

Decedent's widow survived both the decedent and the probate of the estate.

On its tax return, filed on October 1, 1964, the estate claimed this bequest as a marital deduction under 26 U.S.C. § 2056(a), Internal Revenue Code of 1954.[2] The Commissioner of Internal Revenue disallowed the deduction under the terminable interest rule of 26 U.S.C. § 2056(b), which provides that where an interest passing to the spouse will terminate or fail on the occurrence of an event or contingency or on the failure of such a contingency to occur, no deduction shall be allowed.

The appellant also attacks inclusion within the gross estate of $5,000 received by the widow from Brake Laboratories, Inc., a brake repair business owned and operated by decedent and his brother, pursuant to an agreement reached in 1963 but made retroactive to October 1, 1956. This agreement stated that in the event of the death of either the decedent or his brother, the corporation would pay to the widow, if there was one, $5,000 at the rate of $100 per week. If there was no widow or if the widow died before the end of the fifty weeks, the balance would go to decedent's estate. The Commissioner relied upon 26 U.S.C. § 2037, Internal Revenue Code of 1954, which provides:

> (a) General Rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time after September 7, 1916, made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, if—
>
> (1) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent, and
>
> (2) the decedent has retained a reversionary interest in the property (but in the case of a transfer made before October 8, 1949, only if such reversionary interest arose by the express terms of the instrument of transfer), and the value of such reversionary interest immediately before the death of the decedent exceeds 5 percent of the value of such property.

Appellant also attacks the inclusion in the gross estate of the value of an automobile purchased by decedent with his

---

1. 54 T.C. 805 (1970).

2. "(a) Allowance of marital deduction.— For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

own funds registered in the name of Brake Laboratories, Inc. The corporation apparently considered the money to be a loan from the decedent. Subsequent to decedent's death, the automobile was transferred to the widow by the corporation. Neither the value of the automobile nor the value of the debt were included in the estate's original return.

The next issue relates to valuation of United States Treasury bonds. Decedent owned three 2½ percent United States States Treasury bonds of a par value of $1,000 at the date of his death. At that time their fair market value was $2,718.75. The Commissioner increased the value of these bonds to their par value, since under his determination, recited above, the estate tax exceeded the par value of the bonds.

Finally, the estate had claimed as a deduction rent for decedent's apartment for the three months following his death. Decedent had originally leased the apartment in 1943, and the lease had expired a number of years before decedent's death. No other lease agreement was entered into, although decedent continued to live in the rent-controlled apartment. The Commissioner disallowed the deduction, contending that this rent obligation was not a debt of the decedent. The Tax Court sustained each of these actions by the Commissioner, and in each instance we affirm.

I. Marital Deduction:

■ Section 2056(b) (3) of the Internal Revenue Code of 1954 provides that the terminable interest rule does not apply to a bequest which will terminate only if the spouse dies within six months after the decedent's death, or only if the decedent and spouse die in a common disaster, as long as such termination does not in fact take place. There can be little question, however, but that the Tax Court was correct in its conclusion that the specific clause of the will in this case does not bring itself within the terms of

this exception. The Tax Court correctly noted that in New York the location of probate, there is no fixed statutory period when a will is required to be filed for probate.[3] Thus at the time of the making of the will it was quite conceivable that probate would take longer than six months from the date of death. Since by the terms of the will the widow was not to take if she died before probate, it was possible that her interest would be terminated later than six months after decedent's death, thus rendering section 2056(b) (3) clearly inapplicable.

The estate contends that the language of the clause indicates the decedent's intent to have it serve solely as a simultaneous death-common disaster clause. The words of the clause itself, however, indicate that the intent was to create two separate conditions: that the widow not die in a common disaster, *and* that she not die before probate. The estate bases its argument upon a number of cases which have construed what the estate considers almost identical language as constituting nothing more than common disaster clauses. Though there are some similarities of language in these clauses, in each case there exists a significant difference which clearly distinguishes the present situation.

Strongest reliance by the estate is placed upon the decision of the Surrogate Court in In re Bull's Estate, 175 Misc. 197, 23 N.Y.S.2d 5 (Surr.Ct.1940). In that case the relevant clause read as follows:

In case my said husband shall not survive me or in case of our deaths simultaneously or if the order of our deaths cannot be determined or if my husband shall die in a common disaster with me *or so nearly together with me that there shall not have been a reasonable time and opportunity to probate my said Last Will * * ** I hereby give, devise and bequeath all of my estate * * * in accordance with the provisions of my said Last

3. See, e. g., In re Johnston's Estate, 186 Misc. 540, 64 N.Y.S.2d 543, 547 (Surr. Ct.1945) ; In re Will of Wool, 57 Misc. 2d 757, 293 N.Y.S.2d 678 (Surr.Ct.1968).

Will and Testament, dated February 13, 1929. 23 N.Y.S.2d at 7–8 (emphasis added).

The court held that this clause did not contain two conditions, but only one: that the husband survive a common disaster. The language of the clause in *Bull* is distinguishable, since there the wording could reasonably be read to contemplate that the clause apply only to common disasters, either in which both decedent and her husband died together, or where he survived shortly after her but eventually died as a result of that disaster. In the present case, no such reading is possible. The intent to create two separate conditions is manifest from the language.

The estate also relies upon the decision in Bland v. United States, 66–1 U.S.T.C. ¶ 12,362 (N.D.Ala. Sept. 22, 1965), but that decision is likewise easily distinguished. The relevant clause in *Bland* provided:

> It is here expressly made and provided in this will that if my said wife * * * and I are killed or die at or near the same time or if she dies before this will is probated, or if she dies within thirty days after my death, it is expressly made and provided that all the part willed, devised, and bequeathed to her shall go to [my brothers and sisters].

The court, in interpreting the decedent's intent, construed this clause in its charge to the jury to mean simply that if the wife died within thirty days after his death, the bequest would be void. The court concluded that the decedent must have assumed that his will would be probated before thirty days. It is true that such an interpretation renders the probate portion of the clause superfluous, but the court relied on other language in the will advising that the will be probated as soon as practicable.

In reaching its conclusion on this point, the Tax Court relied, quite correctly, on the decision in Hansen v.

Vinal, 413 F.2d 882 (8 Cir. 1969). There the court disallowed a deduction because the will created the condition that the spouse survive past the date of probate, and under the relevant state law probate could well take place after six months. Thus the exception of the terminable interest rule was held to be inapplicable. The estate contends that reliance on this decision is improper, since local law is to apply. Though this may be true, New York law, like that of Nebraska relevant in *Hansen,* provides that probate may be completed well past the six month limit of the terminable interest rule exception.[4] For present purposes, then, the differences between New York and Nebraska law are irrelevant, and the Eighth Circuit's decision in *Hansen* is directly in point. We agree with its reasoning. The Tax Court's decision to disallow the marital deduction was correct.

II. $5,000 Death Benefit:

 The inclusion of the death benefit in the gross estate is required by section 2037 of the Internal Revenue Code of 1954. The requirements for inclusion in the gross estate in this section are a transfer by the decedent, a right to receive the benefit arising only through survival of the decedent, and the existence in the decedent of at least a 5% reversionary interest. Here the wife's right to receive the benefit was conditioned upon the death of the decedent and the decedent possessed a reversionary interest, since by the terms of the agreement if there were no widow the money was to pass to the decedent's estate. The estate does not seem to dispute that the value of the reversionary interest is greater than 5%.

 The major claim raised by the estate is that section 2037 is inapplicable, since no "transfer" by the decedent took place. The Tax Court concluded that the transfer of the partnership assets to the corporation by the decedent and his brother constituted consideration for,

---

4. In this context, it is relevant to note that under section 213, New York CPLR, the applicable statute of limitations for an action to establish a will is six years.

*inter alia,* the $5,000 death bequest, and hence the necessary transfer was present. For the terms of section 2037 to apply, there need not have been a direct transfer; it is sufficient that the decedent transferred something to a third party in exchange for the death benefit.[5]

The estate argues, however, that the transfer of the partnership assets to the corporation, which took place in 1957, could not possibly have served as consideration for establishment of the death benefit in 1963. The attorney for the estate, the decedent's son-in-law, who also had prepared the stockholders' agreement containing the death benefit provision, testified that the death benefit was in no way connected to the transfer of the assets. The Tax Court as the finder of fact, however, disbelieved this testimony and interpreted the agreement, in its entire context, as implying that the provision of the death benefit was merely the formalization of a previously reached agreement. The Tax Court could reasonably conclude that there was, in fact, such a "transfer" by decedent. Section 2037 is therefore directly applicable, and the inclusion of the $5,000 death benefit in the gross estate must be upheld.[6]

### III. Inclusion of Automobile in Gross Estate:

■ The Commissioner included the value of the automobile in the gross estate on the basis of section 2033, Internal Revenue Code of 1954, which provides that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." As the Commissioner contends in this appeal and as the Tax Court concluded

below, either the value of the automobile or the value of the claimed indebtedness should have been included in the gross estate. Although the estate's attorney testified that the automobile was in fact the corporation's, it was reasonable for the Tax Court to conclude that this car, purchased by the decedent with his own funds for a corporation of which he was half owner and used primarily by him and given to his widow after his death was, for all intents and purposes, his automobile. Either the automobile was owned by the decedent, or the corporation still owed him the money for its purchase. Apparently no loan payments, or even repayment arrangements, had been made.

### IV. Treasury Bonds:

■ The Tax Court decided that the Treasury bonds listed in the decedent's name should be valued at par, rather than at actual market value, for purposes of meeting the estate tax. We agree with this conclusion. See Bankers Trust Co. v. United States, 284 F.2d 537 (2d Cir. 1960), cert. denied, 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 204 (1961). There it was held that where Treasury bonds may be used to apply to the estate tax, they may be measured at par if par is higher than the market value on the date of death. The estate attempts to distinguish the case on the grounds that the estate, including the bonds, in the case at bar has long since been distributed. The court in *Bankers Trust* emphasized, however, that two of the bonds actually were applied at par in partial payment of the estate tax, and the others might have been so applied. 284 F.2d at 538. Thus the fact that the

---

5. See Worthen v. United States, 192 F. Supp. 727 (D.Mass.1961); Lehman v. Commissioner of Internal Revenue, 109 F.2d 99 (2d Cir.), cert. denied, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940).

6. The estate also contends that the death benefit comes within the marital deduction of section 2056(a). But since, under the terms of the death benefit provision, the money was to be paid to the widow only if there was one, it is evident that the widow must have survived decedent

to take the benefit. This fact clearly brings the death benefit under the terms of the terminable interest rule, discussed *supra.* The exception to the terminable interest rule for requirements that the spouse survive the decedent by six months is inapplicable, since these payments were being made at the rate of $100 per week, and thus to receive the full amount the widow would have to survive a fifty-week period.

estate has long since been distributed is irrelevant. All that is of significance is that the bonds might have been used to pay the estate taxes.

**V. Rent Payment Deduction:**

Section 2053(a) (3), Internal Revenue Code of 1954, permits the estate to deduct from the gross estate claims against it. Here, the estate attempted to deduct the three months' rent allegedly owed by the decedent, and paid by the estate after his death. The claims which may be properly deducted must be those that "represent personal obligations of the decedent existing at the time of his death. * * *"[7] The Tax Court viewed this issue as "purely factual." Its conclusion that the estate had failed to present evidence to demonstrate that a lease existed from year to year was a reasonable one. The estate fails to cite us to any provision of the Rent Control Law of New York City which provides for the establishment of a yearly lease after the initial written lease has expired. Since the estate has not met its evidentiary burden of showing that these rent payments derived from an existing debt or obligation of the decedent, section 2053(a) (3) is irrelevant.

The decision of the Tax Court is affirmed in all respects.

---

7. Treasury Regulations on Estate Tax, § 20.2053–4 (26 C.F.R. 1971).