ESTATE OF ELFRIDA G. SIMMIE, DECEASED, JAMES H. HAYS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8637–74.     Filed March 6, 1978.

*Michael L. Curtis,* for the petitioner.
*Peter D. Bakutes,* for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined a deficiency of $21,783.72 in the estate tax of the Estate of Elfrida G. Simmie (hereafter decedent) who died on February 25, 1971. The parties

are agreed that there is an error in the factor used in calculating the deficiency.

There are two issues for determination:

(1) Whether the valuation of decedent's life interest should be computed with the life estate valuation table in effect at the date she elected to take the life estate under her husband's will or with the life estate valuation table in effect at the date of her death; and

(2) Whether unused flower bonds[1] which were sold between the date the return was filed and the date the deficiency was determined should be valued for estate tax purposes at par value rather than at sales (market) price.

All the facts have been stipulated and are incorporated herein by this reference.

Decedent's husband, Albert T. Simmie (hereafter Albert), died testate on September 26, 1957. Under the provisions of Albert's will decedent was required to take outright her one-half interest in the community property or to take under the will. Following the instructions of the will, decedent, on December 16, 1958, elected to transfer one-half of her half interest (25 percent) in the community property into a trust established under the will which included all of Albert's half of the property. Decedent's transfer was made in return for income for life from Albert's one-half interest.

The parties stipulated that the transfer by decedent of her property into the trust established under Albert's will in exchange for a life interest in that trust was a section 2036(a)[2] transfer. The parties further agreed that the income earned by Albert's estate prior to decedent's election plus the value of decedent's life estate comprised the "consideration received" under section 2043 by decedent for relinquishing part of her property.

At the time of her death, decedent owned flower bonds with a par value of $145,000. Bonds in the amount of $126,500 were used to pay on the $126,813.37 estate tax shown on the return. The balance of $18,500 was sold by petitioner after the estate tax return was filed but before the deficiency was determined.

---

[1] Flower bonds are U.S. Treasury bonds which may be used at par value regardless of their redemption date for the express purpose of paying the Federal estate tax.

[2] All statutory references are to the Internal Revenue Code of 1954, as in effect for the year in issue.

The parties stipulated that the selling price of the balance on decedent's date of death was $13,505.

## Valuation of the Life Estate

In deciding this narrow issue we are asked to choose between two Treasury Department tables to value the life estate decedent received as consideration for contributing to the trust established under Albert's will.

Respondent contends that section 20.2031–7, Estate Tax Regs., which was in effect on the date of decedent's election in 1958 and which provides a 3½-percent table for the valuation of annuities, life estates, terms for years, remainders, and reversions "For estates of decedent's dying on or before December 31, 1970" should be used. Petitioner urges that section 20.2031–10, Estate Tax Regs., which was in effect in 1971 when decedent died and which uses a 6-percent table for the same purposes when the decedent dies *after* December 31, 1970, be used.

By operation of sections 2036(a) and 2043(a), the amount decedent originally transferred less the value of the life estate received is treated as a gift to the trust and is returned to decedent's estate. The 6-percent table would assign a higher value to decedent's life estate thereby reducing the amount returned to her estate.

The contentions of the parties in this case are quite simple. Respondent contends that the 3½-percent table should be used to value the gift for both gift tax and estate tax purposes even though decedent died after December 31, 1970. Petitioner agrees that the valuation of the life estate for gift tax purposes occurs at the date decedent elected to take under the will. Petitioner, however, reads section 20.2031–7 and section 20.2031–10, Estate Tax Regs., literally and concludes that the express wording compels the estate of one dying after December 31, 1970, to use table 20.2031–10, Estate Tax Regs., when valuing the life estate.

The life estate in decedent was established when she opted, on December 16, 1958, to take under Albert's will. Thus, it constituted, in part, consideration the trust paid to receive decedent's assets. Petitioner states that use of the 1971 6-percent estate tax table has no bearing on decedent's use of the 1958 gift tax table which was used to calculate the amount of her gift to the trust. While it is true that use of the 1971 table does not affect the amount of gift tax owed in 1958, this is irrelevant to

the issue presented here. Using the 1971 6-percent table increases the value of the life estate decedent received over the value derived by using the 1958 gift tax table which was initially used in valuing decedent's gift to the trust. In this case its use would eliminate any gift element from being included in the decedent's estate under section 2036(a).[3]

For years ending on or before December 31, 1976, gifts were taxed at a progressive rate, approximately three-fourths the rate imposed upon estates. Additionally, a donor had a lifetime gift tax exemption of $30,000, sec. 2521, a $3,000 annual exclusion per donee, sec. 2503(b), and his gross estate would not include taxable gifts made prior to his death, with certain exceptions (such as in sec. 2036(a)),[4] thereby effectively permitting splitting of the progressive tax on transfers. We believe that for those transfers subject to section 2036(a), Congress evinced a desire to retain the property in the estate and to thereby tax the property at estate tax rates.

In 1958, decedent made total gifts of $50,126.14. After subtracting the $30,000 specific exemption and $6,000 for two $3,000 annual exclusions, decedent made a total of $14,126.14 of taxable gifts for the year on which gift tax in the amount of $715.41 was imposed. The actual value of the gift in issue here at the time of transfer in 1958 was $16,043.25 (value of remainder interest surrendered of $84,366.26 less the value of life estate received of $68,323.04). Thus, the total gift tax paid in 1958 on the transfer was only $259.95—

$$\frac{\$16{,}043 \text{ section } 2036(a) \text{ transfer}}{\$44{,}126 \text{ taxable gifts plus } \$30{,}000 \text{ specific exemption}} \times \$715$$

If we were to adopt petitioner's computations, this is the total

---

[3]

|  | 3½-percent table | 6-percent table |
|---|---|---|
| Amount includable under sec. 2036(a) prior to reduction by sec. 2043 consideration | $135,820 | $135,820 |
| Less: Sec. 2043 consideration |  |  |
| 1. Income earned on Albert's one-half share of the property between 9/26/57 and 12/16/58 | (14,283) | (14,283) |
| 2. Value on 12/16/58 of a life estate of $342,986 of a person aged 76 | (70,991) | (133,192) |
| Total amount includable in estate | 50,546 | None |

[4]Under sec. 2001, taxable gifts (within the meaning of sec. 2503) made by a decedent after Dec. 31, 1976, are added back into the estate, other than gifts which are includable in the gross estate of the decedent.

amount of tax to be paid on the transfer. Thus, adoption of petitioner's argument would in this case eliminate the impact of section 2036(a) and would tax the transfer in 1958 as a gift rather than in 1971 as part of decedent's estate.

We are further persuaded that the 3½-percent table should be used after noting the comparable gift tax table, sec. 25.2512–9, Gift Tax Regs. This table is used for transfers after December 31, 1970, and is identical actuarially to section 20.2031–10, Estate Tax Regs. To hold for petitioner would do harm to the concept that the estate tax and gift tax are designed to work in harmony, *Harris v. Commissioner*, 340 U.S. 106 (1950); *Commissioner v. Wemyss*, 324 U.S. 303 (1945); *Merrill v. Fahs*, 324 U.S 308 (1945). Therefore, we hold that for purposes of section 2043, valuation must be made at the date of transfer in 1958 and not at the date of death in 1971. This means that the 3½-percent table is to be applied.

### Valuation of Treasury Bonds

The second question for our consideration centers around the estate's use of Treasury bonds which are redeemable at par value when used to pay the estate tax. The estate timely filed an estate tax return and paid $126,500 of the $126,813.37 of the tax shown to be due on the return in flower bonds. In recent years these bonds have been greatly discounted so frequently when the redemption date is not imminent, that the portion not used for tax purposes is often sold immediately so the money may be reinvested at a higher yield.

Petitioner had Treasury bonds with a par value of $145,000. Of that amount, $126,500 was used to pay the calculated estate tax on the return filed November 26, 1971. The balance of $18,500 par was stipulated to have been sold at the mean average price of $13,505 as of February 25, 1971, the date of decedent's death. Almost 2½ years[5] after the selling date stipulated, respondent issued a notice of deficiency on August 2, 1974, determining a deficiency of $21,783.72 in the estate tax, due primarily to respondents' assertion that petitioner had erred in choosing the 6-percent valuation table instead of the 3½-percent table. Once the deficiency was established by respondent, he determined

[5]The market price for the bonds was as of the day of decedent's death, Feb. 25, 1971. The estate tax return was submitted Nov. 24, 1971. The notice of deficiency was issued Aug. 2, 1974.

that because flower bonds were available to pay the deficiency when the estate tax return was initially filed, the bonds must be appreciated to par value to the extent they *could have been used* to pay the additional tax due. We have held above that petitioner chose the incorrect table thereby increasing the value of the life estate and reducing the taxable estate.

The question now is whether flower bonds valued by the estate at the price for which they were sold should be valued at par thereby increasing the value of the estate by $4,995, the difference between the par value of $18,500 and the stipulated price, $13,505.

In *Bankers Trust Co. v. United States,* 284 F.2d 537 (2d Cir. 1960), the court held that flower bonds which are *available* but not used to pay the estate tax must be valued at par. In *Bankers,* the estate included flower bonds having a par value of $475,000 and a market price of $448,034. In determining the estate tax of $1,900,000 the estate valued the bonds at par and used $200,000 worth as partial payment. Subsequently, the estate sought to recover an overpayment by alleging the unused bonds should be valued at market price. The Second Circuit held that the estate could have used more bonds at par value to pay the estate tax. Because the bonds were available to be used at par, they must be valued at par.

We first passed on this issue in *Estate of Fried v. Commissioner,* 54 T.C. 805 (1970), affd. 445 F.2d 979 (2d Cir. 1971), cert. denied 404 U.S. 1016 (1972). In that Court reviewed opinion we held that flower bonds which could have been used to pay the estate tax, as finally determined, must be valued in the estate at par rather than market. Petitioner attempts to distinguish our holding in *Fried* on the basis that the issue of availability was not raised. The petitioner in *Fried* argued only that there was no deficiency and, therefore, the bonds must be valued at market. Here petitioner argues the bonds were no longer available for payment because they were disposed of after the estate tax return was filed but before issuance of the notice of deficiency. However in *Fried,* this Court, upon finding a deficiency, held the flower bonds had to be included in the estate at par, apparently deeming irrelevant the continued availability of the bonds for payment at the time the estate tax was finally determined.[6]

---

[6]There is at least one case, *Colorado National Bank of Denver v. United States,* an unreported case (Colo. 1971, 27 AFTR 2d 71-1827, 71-1 USTC par. 12,781) in which a court held that the disposal of the

Accordingly, we hold the bonds which were not used to pay the estate tax as we have determined it herein must be valued in the estate at par notwithstanding their disposition between the time the estate tax return was originally filed and now.

Due to the stipulation that there is an error in the factor used in calculating the deficiency in the notice of deficiency,

*Decision will be entered under Rule 155.*

---

flower bonds held by an estate before issuance of the notice of deficiency made them unavailable to pay the deficiency assessment and, therefore, their inclusion in the estate at market rather than par value was correct. Petitioner strongly argues that this case should be controlling here. However, having previously decided the issue in *Estate of Fried v. Commissioner,* 54 T.C. 805 (1970), affd. 445 F.2d 979 (2d Cir. 1971), cert. denied 404 U.S. 1016 (1972), a Court reviewed opinion affirmed by the Second Circuit, we feel bound to follow that result.