JAMES G. SUMMERS *vs.* THOMAS W. SUMMERS.

No. 88-P-23.

Norfolk.    October 13, 1988. — November 16, 1988.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Devise and Legacy,* Real property. *Real Property,* Life estate, Sale. *Words,*
    "Then current value."

Under a will leaving a life estate in the testatrix's house to her husband with
    the remainder to her two sons in equal shares and authorizing the husband
    to sell the property in which event "there shall be paid to . . . [the
    husband] from the proceeds of sale an amount representing the then
    current value of his life interest therein," the testatrix, when she spoke
    of the "then current value of [the husband's] life interest," was taken to
    have meant the actual market value of so much of the life estate as
    remained at the time of the husband's sale of the house, which, in the
    circumstances, was to be approximated by reference to life interest
    valuation tables promulgated by the United States Treasury Department
    under § 2031 of the Internal Revenue Code (Treas. Reg. §§ 20.2031-1
    et seq.) in use at the time of sale, reflecting then current market conditions
    and actuarial assumptions, rather than those in effect at the time of the
    testatrix's death when conditions were different. [593-594]

CIVIL ACTION commenced in the Norfolk Division of the
Probate and Family Court Department on June 28, 1985.

The case was heard by *Alfred L. Podolski,* C.J., on a motion
for partial summary judgment.

*James D. St. Clair* for the plaintiff.
*Bruce P. Gilmore* for the defendant.

ARMSTRONG, J.    In 1980, the plaintiff's wife by will left
him a life estate in her North Falmouth residence with the
remainder to the defendant and the plaintiff's other son in equal
shares. The plaintiff was authorized, however, at any time to
sell the property, in which event "there shall be paid to my
said husband from the proceeds of sale an amount representing
the then current value of his life interest therein, and the balance

of the net proceeds shall be distributed, in equal shares, to my sons . . . ." The plaintiff sold the property in 1986; the parties are in dispute as to the value of his life estate.

The parties agree that the "then current value" of the life estate is to be determined by reference to the life interest valuation tables promulgated by the United States Treasury Department under § 2031 of the I.R.C. (see Treas. Reg. §§ 20. 2031-1 et seq.). See *Harris* v. *United States,* 764 F.2d 1126, 1130-1131 (5th Cir. 1985). They disagree whether to use the table in effect in 1980, at the time of the testatrix's death (Table A[1] of Treas. Reg. § 20.2031-10[f]), or the one in effect at the time of the sale in 1986 (Table A of Treas. Reg. § 20.2031-7[f]). The difference is considerable. The 1980 table, which differentiated by gender, was predicated on a six percent interest factor and would value the plaintiff's life estate (based on his life expectancy at the time of sale) at 49.585% of $580,000 (the sale price). The 1986 table, which is gender-blind, was predicated on a ten percent interest factor and would value the plaintiff's life estate at 69.352% of the sale price.

The basic contention underlying the defendant's advocacy of the 1980 table is that the testatrix naturally would have contemplated that the plaintiff's life estate would diminish in value as of the years passed, that the use of the table in effect at her death would be consistent with her presumed expectation, and that this approach is consonant with the usual rule that a will speaks as of the time of the testator's death and refers to the state of things then existing. *Cape Cod Bank & Trust Co.* v. *Cape Cod Hosp.,* 3 Mass. App. Ct. 279, 281 (1975), and cases cited.

The argument is not persuasive. The testatrix did not mention life estate valuation tables. When she spoke of the "then current value of [the plaintiff's] life interest," she must be taken to have meant the actual market value of so much of the life estate as remained at the time of the sale. The actual market value of such an interest would necessarily be affected not only by the diminishing expected duration of the life estate but also by market forces reflected both in fluctuating real estate values and in fluctuating interest rates. The actual market

value of the life estate at the time of sale will be approximated by the actuarial tables in use at the time of sale, reflecting current market conditions and actuarial assumptions, rather than those in effect at an earlier time when conditions were different. Compare *United Food and Commercial Workers Union* v. *Progressive Supermarkets*, 644 F. Supp. 633, 640 n.6 (D.N.J. 1986); *Estate of Simmie* v. *Commr. of Internal Revenue*, 69 T.C. 890, 892-94 (1978). It could be argued that the 1986 table marginally overvalued the plaintiff's share, either because the interest factor was higher than market conditions in 1986 actually warranted, or because of the gender-blinding; but the parties foreclosed consideration of such questions by stipulating to the use of one or the other of the two treasury tables as reflective of market conditions at the two pertinent dates.

The "judgment" appealed from, ostensibly a final disposition, was entered on cross-motions for partial summary judgment which were addressed only to the valuation issue. The parties had indicated that they thought they would be able to settle amicably the other issues raised in the pleadings. A judgment, however, should not be entered until the record reflects that those issues have been resolved by settlement or otherwise. See Mass.R.Civ.P. 54(a) and (b), 365 Mass. 820-821 (1974).

The judgment and the order allowing the defendant's motion for partial summary judgment are reversed. The order denying the plaintiff's motion for partial summary judgment is reversed and a new order is to be entered allowing that motion. The case is remanded for further proceedings consistent herewith.

*So ordered.*