ESTATE OF FRANCIS S. TILYOU, BY FLORENCE J. TILYOU, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4805-68. Filed September 27, 1971.

*Daniel Flynn*, for the petitioner.
*Marwin A. Batt* and *Marion L. Westen*, for the respondent.

QUEALY, *Judge:* The respondent determined a deficiency in the Federal estate tax of the Estate of Francis S. Tilyou, deceased, in the amount of $112,600.21.

The question to be decided is whether the personal property of the residuary estate of Francis S. Tilyou is an "interest in property" for purposes of determining the marital deduction of the estate under section 2056(a).[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and exhibits thereto are incorporated herein by reference.

Francis S. Tilyou (hereinafter sometimes referred to as either the decedent or the testator), deceased, was a resident of Brooklyn, New York, at the time of his death on May 6, 1964. Florence J. Tilyou (hereinafter sometimes referred to as either the petitioner or the widow) is the executrix of his estate. At the time the petition in this case was filed, she was a legal resident of Scottsdale, Ariz. The Federal estate tax return was filed with the district director of internal revenue in Brooklyn, New York.

The decedent's father, George C. Tilyou, died on November 30, 1914, leaving a holographic will. He left surviving him a wife, Mary E. Tilyou, and five children, including the decedent. The major portion of the estate of George C. Tilyou was all of the outstanding stock in the Tilyou Realty Co. (hereinafter referred to as Tilyou Realty). Tilyou Realty had been incorporated in New York on November 25, 1902.

The last will and testament of George C. Tilyou appointed Mary E. Tilyou as executrix. (Mary E. Tilyou is hereinafter sometimes referred to as either Mary or mother.) It also created a trust for his five children with Mary as trustee. The will stated in pertinent part as follows:

I give everything else that I may be posessed [sic] of both Real and Personal to my dear wife for her to [sic] be placed in trust for my children share and share alike.—The income from same to be used by my wife during her life, and she may carry on my different business enterprises under the assistance of a capable manager—or dispose of same as she best wishes.

Edward F. Tilyou, one of George C. Tilyou's five children, died on June 19, 1944. In his last will and testament, he left his entire estate to his surviving brothers and sisters.

On June 28, 1945, the four surviving children of George C. Tilyou entered into an agreement.[2] The agreement stated *inter alia* as follows:

WHEREAS, George C. Tilyou, late of the County of Kings, State of New York, died on the 30th day of November, 1914, leaving a Last Will and Testament bearing date the 2d day of October, 1899, which said Last Will and Testament was duly admitted to probate and Letters Testamentary thereon were duly issued to MARY E. TILYOU, the sole executrix named in said Will, on the 14th day of January, 1915, by the Surrogate of the County of Kings, State of New York, and the said executrix duly qualified therein; and

WHEREAS, in and by a paragraph of said Will, all of the income from said

---

[2] The parties have stipulated that the agreement was entered into on June 28, 1945. However, the actual agreement is dated June 26, 1945.

estate was directed to be paid to his wife, MARY E. TILYOU, during her life; which said paragraph reads as follows:

"I give everything else that I may be possessed of both Real and Personal, to my dear wife for her to be placed in trust for my children, share and share alike. The income from same to be used by my wife during his life and she may carry on my different business enterprises under the assistance of a capable manager, or dispose of same as she best wishes."

and

WHEREAS, said MARY E. TILYOU is still receiving the income payable under said Will; and

WHEREAS, upon the death of said life tenant, MARY E. TILYOU, the surviving children of said GEORGE C. TILYOU, deceased will be entitled to receive all of the property remaining in his estate; and

WHEREAS, we, being of full age and sound mind, desire that there be an equal division of the said property among the four (4) subscribers to this agreement, namely, MARIE H. TILYOU, GEORGE C. TILYOU, EILEEN T. McALLISTER and FRANCIS S. TILYOU (also known as FRANK S. TILYOU),

Now THEREFORE, in consideration of the premises, and other good and sufficient causes of consideration, and in order to avoid questions and disputes as to division of said property, it is

HEREBY AGREED by us individually and collectively, that the property received by us from the estate of GEORGE C. TILYOU shall be divided into four (4) equal parts, one (1) of such parts to be distributed to and be paid to each of us absolutely, or in the event of the death of any of us, before the death of the life tenant, MARY E. TILYOU, then the one-quarter (¼) share payable to any of us shall be paid to his or her heirs, representatives or distributees.

The purpose of this agreement is to avoid complications and disputes in the settlement of said estate, and, further, to reduce the cost of administering the estate of GEORGE C. TILYOU following the death of the aforesaid life tenant.

This agreement shall inure to the benefit of, and be binding upon, the heirs, representatives and distributees of the parties hereto.

On July 14, 1945, the decedent made a will (hereinafter sometimes referred to as the 1945 will). The will provided *inter alia* as follows:

FIRST: I direct that all of my just debts, funeral and testamentary expenses shall be paid as soon after my death as shall be practicable.

SECOND: All of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, including stocks, bonds, cash, interest in estates, and including all rights or interests which I may have or over which I may have the power of disposal in the estates of any deceased persons, of which I may die seized or possessed, I give, devise and bequeath unto my wife, FLORENCE J. TILYOU, to have and to hold the same for her own use and benefit absolutely and forever.

In the event, however, of the death of my wife herein named before me, or before she shall have become entitled to any part or share of my residuary estate, then my said residuary estate shall be paid to my children, EDWARD FRANCIS TILYOU and PETER SHERIDAN TILYOU, share and share alike, and I give, devise and bequeath the same accordingly. Whenever in this will I refer to children, the same shall be taken to include not only my children in existence at the date of this will, but also such child or children as may hereafter be born to me.

THIRD: I authorize and direct my executors to pay any and all personal or inheritance taxes, state or federal, that may be due or may become due on any devise or legacy herein provided for, out of my residuary estate.

FOURTH: I hereby nominate, constitute and appoint my sister, EILEEN T. McALLISTER and JAMES J. ONORATO, or the survivor of them, executors of this my Last Will and Testament without requiring them, or either of them to give any bond or security for the faithful performance of her or his duties as such under any law or any jurisdiction, to the contrary notwithstanding.

FIFTH: I authorize and empower my executors hereinbefore named:

(a) To keep and retain any and all of my investments as they may be at the time of my death, whether in stocks, bonds or otherwise, if in their judgment they shall deem it advisable, and in the interest of my estate to do so, and not to convert the same into cash; and

(b) To sell, invest, re-invest, mortgage, lease, pledge, hypothecate or encumber any part or all of my estate, real, personal or mixed, at such times and upon such terms, either for cash or on credit, or partly cash or partly credit, as they in their judgment shall deem advisable, hereby intending to vest in them an absolute and unconditional power to sell, mortgage, lease, pledge, hypothecate, dispose of or encumber any or all of my estate and to change any and all investments and re-investments, or any portion of my estate in their discretion, as they shall deem advisable, and in the interest of my estate, and whether or not the investment shall be authorized by the laws of the State of New York to be made by an executor, and whether or not the re-investment be made within the State of New York or some other state or county, and without any personal liability or responsibility.

On November 30, 1948, the surviving children of George C. Tilyou made an agreement which imposed restrictions upon the sale or disposition of their interest in the stock of Tilyou Realty. The agreement stated *inter alia* as follows:

WHEREAS, the assets of the said Estate of George C. Tilyou include all the stock of the Tilyou Realty Co., of Brooklyn, New York, and all the stock of the Atlantic Amusement Company of Atlantic City, New Jersey, which stock is hereby made the subject of this agreement,

Now, THEREFORE, in consideration of the premises and of the mutual promises and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree with each other as follows:—

1. That none of the parties hereto, his successors or assigns shall sell, assign, transfer, pledge, encumber or in any other way place a lien on or dispose of any or all of the shares of stock of either of said corporations or any interest therein that may now or hereafter be held or owned by him or her, nor shall any of such shares be transferable except as follows:—

(a) Any sale must embrace the entire interests and stockholdings of the seller in said corporations, and

(b) If a bona fide offer or offers is received from a person or persons, whether or not they be parties to this agreement, by one or more of the parties hereto, or their successors, for the purchase of all of his or her or their shares of such stock, such bona fide offer must be put in writing and signed by the offeror and duplicate copies thereof shall be delivered personally to or sent by registered mail to each of the other persons who may then be stockholders, and the other stockholders shall have the right to meet the terms of said bona fide offer within

a period of 60 days and thus acquire such shares of stock of the party or parties receiving such bona fide offer.

(c) Each of the other stockholders shall have such prior right or option to purchase such proportion of the stock so offered as his then holding shall bear to the then entire holdings of the other stockholders, and in case any of the other stockholders shall fail or neglect to exercise his option to purchase his pro rata share of the stock so offered, the remainder of the other stockholders may purchase the same proportionately.

Any stockholder may, by will or gift, dispose of his holdings to his wife, child, or any member of his immediate family, and the prior right or other right or option of other stockholders to purchase hereby provided for shall not apply to any such disposition, but this agreement shall be binding upon such distributees or donees thus receiving such stock.

In the event that any stock of any stockholder is attached for any debt or otherwise, any one or more of the other stockholders shall have the right to pay any such lien and all interest and charges to remove the same, and to hold the stock as security for the repayment thereof, with interest thereon at six per centum (6%) per annum; and meanwhile, any dividends on said stock shall be applied to the payment of any such lien and charges, and interest thereon.

Upon the execution of this agreement there shall be forthwith endorsed on the face of each certificate of stock issued by either of said corporations a legend reading as follows :—

"This stock is issued and held subject to an agreement dated September 30th, 1947, made by MARIE H. TILYOU, FRANCIS S. TILYOU (also known as FRANK S. TILYOU), EILEEN T. McALLISTER and GEORGE C. TILYOU."

This agreement shall expire ten (10) years from the date hereof.

On December 8, 1953, the decedent executed another will. This will (hereinafter sometimes referred to as the 1953 will) is his last will and testament. It is identical to the 1945 will in every respect, except for a change in executors. Florence J. Tilyou was named the executrix in the 1953 will, replacing Eileen T. McAllister and James J. Onorato, who had been named coexecutors of the 1945 will. The decedent never amended the 1953 will, nor did he add any codicil thereto.

Mary E. Tilyou died on August 15, 1954. At the time of her death, Mary was 84 years of age.

The decedent died on May 6, 1964. His will was probated on June 19, 1964. At the time of his death, the decedent possessed numerous items of personal property, including 397 shares of stock in Tilyou Realty.

OPINION

The decedent died on May 6, 1964. In his last will and testament, he left his entire residuary estate to his wife, the petitioner herein. However, in paragraph Second of the will, he stated in pertinent part:

In the event, however, of the death of my wife herein named before me, *or before she shall have become entitled to any part or share of my residuary estate*, then my said residuary estate shall be paid to my children, EDWARD

FRANCIS TILYOU and PETER SHERIDAN TILYOU, share and share alike, and I give, devise, and bequeath the same accordingly. * * * [Emphasis added.]

The portion emphasized will hereinafter be referred to as the "entitled to" exception of the will.

In filing the Federal estate tax return, the petitioner, as executrix of the decedent's estate, included the entire residuary estate of the decedent in computing the marital deduction allowed under section 2056(a).[3] The respondent concedes that the real property in the residuary estate is includable in computing the marital deduction. *Horton* v. *Commissioner*, 388 F. 2d 51 (C.A. 2, 1967), reversing 47 T.C. 641 (1967). However, he argues that the personal property should not be included in such computations.

Section 2056(a) provides that the marital deduction is computed by "deducting from the value of the gross estate an amount equal to the value of any interest in property" passing from a decedent to his surviving spouse. However, under section 2056(b)(1), an interest which is terminable at the date of the decedent's death is not complete enough to be includable in the amount which is allowed as a deduction under section 2056(a). This is true even if the interest later becomes absolute.[4]

Respondent contends that the widow does not become "entitled to" the residuary estate until administration has been completed and the property is distributed to the residuary legatee. Since the widow might die after the date of the decedent's death but before such distribution,

---

[3] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

[4] There is a clause providing an exception concerning interests that must vest, if at all, within 6 months, and, in fact, do so vest. Sec. 2056(b)(3). However, the exception would not save the petitioner here. Under New York law, a residuary legatee cannot require distribution for at least 7 months after probate. N.Y. Est., Powers & Trusts Law sec. 11–1.5(c) (McKinney 1967).

the respondent determined that the wife's interest in the personal property in the residuary estate was a terminable interest within the meaning of section 2056(b)(1).

On the other hand, the petitioner argues that the "entitlement" phrase was intended by the testator to apply only to specific property in trust with respect to which there was an intervening life estate. Since the life estate terminated prior to the death of the testator, the petitioner concludes that, at the time of the testator's death, the situation to which the "entitlement" phrase was intended to apply no longer existed. Therefore, the petitioner argues that the phrase should be disregarded in construing the meaning of the will.

The petitioner has presented extrinsic evidence in an effort to show such intent on the part of the testator. The Court has reviewed the facts and applicable law, both without taking into account the extrinsic evidence and in the light of such evidence. In either case, we are unable to sustain the argument of the petitioner.

The basic questions for decision are, *first*, what did the testator mean when he used the phrase "entitled to" and, *second*, did such phrase serve to make the interest of the wife in the residuary estate a "terminable interest" as defined in section 2056(b)(1)? In resolving these questions, we must look to the law of the State of New York. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967); *Estate of Julius Selling*, 24 T.C. 191 (1955). Under New York law, the intent of the testator is of paramount importance in construing a will. *Valentine* v. *Aycrigg*, 128 Misc. 635, 219 N.Y. Supp. 577 (Sup. Ct. 1927).

Looking first at the will itself, we find that the "entitlement" phrase applies not to any specific property but to the entire residuary estate. If it were intended to apply, as the petitioner suggests, only to the trust property to which the testator's mother had a prior intervening life estate, we find no indication of such intent in the will itself. We cannot rest our decision upon the meaning the petitioner believes that the testator attempted to convey in his will. Rather, if we assume that the scrivener knew what he was doing, the will necessarily applies to any or all personal property in the estate.

With respect to all such property, the heirs are not "entitled" to it at death in the sense that there is an intervening "estate" or "claim." The executor or administrator holds the personal property in trust—*first*, for the payment of the debts and obligations of the estate and, *second*, with respect to what may remain, for distribution to the residuary legatee. Only then does equitable and legal title to such property merge in the legatee. *Blood* v. *Kane*, 130 N.Y. 514, 29 N.E. 994 (1892). Even where the executor is also the sole legatee, as in this case, he does not get absolute title until all the testator's creditors have been satisfied.

*Blood* v. *Kane, supra.* Thus, from a reading of the will itself, we would assume that the phrase "entitled to" referred to the fact that the wife would not take the personalty as residuary legatee until distributed to her.[5]

Looking to the extrinsic evidence adduced by the petitioner, we reach the same result. The petitioner argues that such evidence indicates that the intent of the testator in adopting the "entitlement" phrase was to pass directly to his heirs his residuary interest in the Tilyou trust if his wife died prior to the death of his mother, the life tenant. In substance, the circumstances to which the decedent referred—if we accept that interpretation of the will—in the use of the "entitlement" phrase related to the ripening of the decedent's remainder interest in possession and enjoyment. However, the phrase is not limited to that remainder interest but applies to the entire residuary estate. With respect to any personalty, therefore, the interest of the residuary legatee did not ripen in the possession and enjoyment until the completion of the administration.

In an effort to foreclose this result, the petitioner also argues that, as sole legatee, the interest of the wife was equivalent to that of a specific legatee with respect to which "entitlement" took effect on the date of death. In support of this argument, the petitioner cites *Blood* v. *Kane, supra.* We do not interpret this case to be supportive of the petitioner's argument. New York courts have consistently held that a taker of personal property under a will does not acquire absolute title in such property until the creditors of the testator have been completely satisfied. See *In re Gray's Will,* 29 N.Y.S. 2d 123 (Surr. Ct. N.Y. Co. 1941), affd. 41 N.Y.S. 2d 949 (App. Div. 1943), affd. 292 N.Y. 532, 54 N.E. 2d 380 (1944).

*Blood* v. *Kane, supra,* does not vary from this rule. There the court stated:

The trust estate of a sole executor, who is also the sole devisee and legatee, is solely for the benefit of the testator's creditors; and when they are paid the trust estate sinks into and is merged with the beneficial interest, and the sole devisee and legatee becomes vested with the legal title of all of the testator's estate. * * * It is a universal rule that when the purpose of a trust has been fully accomplished, the title or estate of the trustee is at an end; and, if he is also entitled to the beneficial estate, the two estates, meeting in the same person, are merged, and he becomes vested in his own right with the entire interest in the property. [29 N.E. at 995.]

Clearly the petitioner did not have absolute title to the personalty at date of death.

---

[5] The phrase originally was used in the prior will of the decedent before the enactment of the so-called marital deduction. Its use avoided a second administration with respect to the same property in the event of the death of the wife prior to the administration of the estate.

Consequently, we find this case to be similar to that of *Estate of Harry Fried* v. *Commissioner*, 445 F. 2d 979 (C.A. 2, 1971), affirming 54 T.C. 805 (1970). There the will provided that the surviving spouse would take decedent's entire estate but specified that if she died with the decedent in a common casualty, or if she survived him but died before probate of the will, then the estate was to go to decedent's daughters. The court disallowed the marital deduction as to the personal property due to the provision concerning survival until probate. Although the case at bar involves a provision worded slightly different than that of *Fried*, it is clear that the result of the language in either case is identical. Thus, they require an identical decision by this Court.

We accordingly find and hold that petitioner is not entitled to a marital deduction as regards the personal property in her husband's estate.

*Decision will be entered under Rule 50.*