ESTATE OF FRED F. ADAMS, Deceased, KATHERINE G. ADAMS, Surviving Spouse, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Adams v. Commissioner
Docket No. 7069-71.
United States Tax Court
T.C. Memo 1973-113; 1973 Tax Ct. Memo LEXIS 174; 32 T.C.M. (CCH) 503; T.C.M. (RIA) 73113; May 21, 1973, Filed *174 Fred F. Adams died intestate on March 5, 1968, in the state of Texas. The estate included, among other property, three pieces of real estate located near Mesquite, Texas and a 1968 Cadillac automobile. Held, the value of the real estate and automobile are determined for purposes of inclusion in the gross estate. Section 2031, I.R.C. 1954. Held further, 25 percent of certain attorney's fees paid by the estate and any portion of the Federal joint income tax paid for taxable year 1968 are not deductible by the estate. Section 2053, I.R.C. 1954. Williard A. Herbert, for the petitioner. W. John Howard, Jr., for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent has determined a deficiency in the estate tax of $4,511.76. The issues for decision are: 1. Whether petitioner correctly determined the value of three pieces of real estate on the Federal estate tax return. 2. Whether petitioner correctly determined the value of one 1968 Cadillac automobile on the Federal estate tax return. 3. Whether certain attorney's fees are deductible under section 2053, Internal Revenue Code of 1954, [1] and 4. Whether the estate can deduct one-half of the income *175 taxes paid on a joint Federal income tax return filed on behalf of decedent and his surviving spouse in the year of decedent's death. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioner is the estate of Fred F. Adams (Mr. Adams is hereinafter referred to as decedent), who died intestate on March 5, 1968, in the state of Texas. Katherine G. Adams was the surviving widow and administratrix of the estate. At the time of the filing of the petition Mrs. Adams resided in Crandall, Texas. Decedent was survived by two adult children, Fred F. Adams, Jr. and Carolyn Adams Smith. Petitioner filed a Federal estate tax return with the district director of internal revenue in Dallas, Texas on June 3, 1969. (1) On the date of his death decedent owned 13 pieces of real estate. Values assigned by petitioner to 10 pieces of real estate were accepted by respondent. The three remaining pieces of real estate in dispute and the values assigned by the parties are as follows: Values Item No.$0
Description
Per return
Per statutory Notice 1
146.851 Acres, Wright Farm John Pike Survey, Dallas County, Texas
$66,083.00
$88,110.00
2
25 Acres, Hall Farm, Edwards Survey, Dallas County, Texas
11,875.00
15,000.00
3
39.25 Acres, Hall Farm, Edwards Survey, Dallas County, Texas 19,625.00 23,550.00
Total
$97,583.00 $126,660.00
*176 The properties under consideration are located southeast of the city of Mesquite, county of Dallas, Texas. At the time of decedent's death the properties were utilized for agricultural purposes as was most of the land surrounding it. The properties are located approximately 10 to 15 miles from the Dallas City limits. Property number one consists of two tracts of contiguous land of 40 and 106.851 acres forming one solid tract. Bounded on two sides by roadways, the land is flat and level. Property number two constitutes a 25 acre tract of land that is also flat and level. It lies northwest of property number one and its southeast boundary runs along the roadway bounding the northwest side of property number one. Thus, properties number one and two are not contiguous, but separated only by a roadway. Property number three is located north-northwest of properties number one and two and consists of 39.25 acres of land. This property is bounded on two sides by roadways. Most of the tract is flat and level; however, it has a drainage ditch of an approximate depth of 15 to 20 feet and an approximate width of 60 to 70 feet running along its northern boundary. This property is not contiguous *177 with properties one or two but is in close proximity. Mr. Geoge Riddell was hired by petitioner to appraise the property in question plus one other tract of land not in controversy. Mr. Riddell has been in the real estate business for 40 years, the last 15 years of which have been devoted to appraising real estate. He has made many appraisals in and around the city of Mesquite and the county of Dallas. Mr. Riddell based his valuations primarily on the following sales of land which he believed were comparable to the land in question: Sale [2]
Date of Sale
Price per Acre 1
1-24-67
$ 550
2
8-19-67
300
3
2-4-66
600
4
11-18-65
502
5
11-3-65
511
6
5-28-65
550
7
12-17-65
350
8
8-17-65
590
There were three other sales of land comparable to the land in question as follows: Sale
Date of Sale
Price Per Acre 9
May, 1968
$575
10
Feb., 1968
700
11
Mar., 1965
650
No offers to purchase the real estate in question were received after decedent's death. (2) At the time of his death decedent owned a 1968 Cadillac automobile. Petitioner included the automobile in the *178 Federal estate tax return at the value of $5,100. The automobile was purchased on November 1, 1967 by decedent for $6,620. The National Automobile Dealers' Association (Blue Book) showed a value for the automobile as of the date of his death of $5,800 which was utilized by respondent in determining the value of the automobile. The automobile in question was taken as a trade-in for the purchase of a 1969 Cadillac in May 1969. (3) Mr. Donald R. Stodghill was hired as an attorney by petitioner to probate the estate. Mr. Stodghill billed the estate for $1,250. This amount included $1,184 as the value of his services and $66.00 for court costs and filing fees in connection with the estate which the parties had agreed would be paid by Mr. Stodghill and reimbursed by the petitioner. On April 9, 1969, petitioner paid Mr. Stodghill $1,184 for his services. The remaining $66.00 was paid directly by the estate. Petitioner deducted the entire amount of $1,250 as administration expenses on the Federal estate tax return. (4) In taxable year 1968 Mrs. Adams filed a joint Federal income tax return. Adjusted gross income for the year was $9,440.73 which consisted of $1,634.08 in interest, *179 $259.09 rental income, $7,163.76 farm income and $383.80 income from wages. The income and expenses arising from farm operations were reported on a cash receipts and disbursements method of accounting. The total tax liability for the year was $1,779.36. Petitioner did not deduct any part of this liability on the Federal estate tax return, however, it contended in its petition that it should be entitled to one-half of this liability ($889.68) as a deduction. ULTIMATE FINDINGS OF FACT 1. The value of the real estate is as follows: Item No.
Description
Value 1
146.851 Acres, Wright Farm
$77,978.00
2
25 Acres, Hall Farm
13,275.00
3
39.25 Acres, Hall Farm 20,842.00
Total
$112,095.00
2. The value of the 1968 Cadillac is $5,800.00. OPINION (1) The first issue involves a determination of the value of the three tracts of land in question. Petitioner contends that the values are those listed in the Federal estate tax return. Respondent contends that the value of the property is not less than $600.00 per acre. Section 2031(a)[3] requires that the gross estate of a taxpayer shall include the value of all property owned at the time of death. Section 20.2031-1(b), Estate Tax Regs. states that fair *180 market value is the price at which the property would change hands between a willing buyer and seller if both have reasonable knowledge of relevant facts and neither is under any compulsion to buy or sell the property. Determination of the fair market value of a piece of property at a given date is a question of fact. Philip Kaplan, 43 T.C. 663 (1965). We deem it unnecessary to delve at length into the evidence presented in this case as to the value of the real property. Petitioner presented a qualified appraiser whose written report gave a detailed basis for his assigned values. Respondent's expert witnesses, who were also qualified appraisers, testified with regard to comparable sales not included in petitioner's report and to the value of the property. This Court, however, is not bound by the conclusory statements of expert witnesses but must look to all of the evidence presented to determine *181 the correct value. Logan Lumber Company v. Commissioner, 365 F. 2d 846 (C.A. 5, 1966). In determining the value of the properties in question, we have taken into account primarily the most recent comparable sales presented by the parties. We have also considered the following factors: the proximity of the property to the city of Dallas and the upward effect on the value of the property that such urban influence has; the fact that at the time of decedent's death the city of Mesquite was growing generally in directions other than toward the properties in question; the fact that the highest use value of the real estate was for development purposes rather than for its current farm usage; the fact that one of the tracts in question has a large drainage ditch running across it; and the fact that all of the properties, though not contiguous, are in close proximity to each other and could be sold as a unit. Petitioner contends that the assessment values used by the city of Mesquite to determine school taxes should be accepted as the fair market value of the property. Section 20.2031-1(b), Estate Tax Regs. states that "Property shall not be returned at the value at which it is assessed *182 for local tax purposes unless that value represents the fair market value as of the applicable valuation date." Mr. Joseph W. Pondrom, a real estate appraiser for the Mesquite Independent School District, testified that he did not know whether the appraised value of the properties in question for 1968 represented their fair market value as of that date. He also testified that appraisal values for local school tax purposes in Mesquite are not necessarily equated to the fair market value of the appraised land. Since petitioner has presented no evidence that the values of the tracts of land in question for local school tax assessment purposes represent their fair market values, we have disregarded such figures in determining fair market value. We conclude that the subject land should be valued as follows: Item No.
Description
Value 1
146.851 Acres, Wright Farm
$77,978.00
2
25 Acres, Hall Farm
13,275.00
3
39.25 Acres, Hall Farm 20,842.00
Total
$112,095.00 (2) The second issue is the value of the 1968 Cadillac automobile owned by decedent at the time of his death. Section 20.2031-1(b), Estate Tax Regs. states that the fair market value of an automobile is the price for which an automobile of the *183 same, or approximately the same description, make, model, age and condition could be purchased by a member of the general public. Respondent based his valuation on the National Automobile Dealers' Association (Blue Book) value of the automobile as of decedent's death. The only basis for determining that the value of the automobile was less than this amount was the unsupported testimony of Fred F. Adams, Jr., one of the heirs of the estate. We conclude that the value of the automobile is $5,800.00. (3) The third issue is whether certain attorney's fees paid by the estate are deductible by the petitioner. Section 2053(a)[4] *184 allows an estate to deduct administrative expenses allowable under the local law of the state in which it is administered. Section 20.2053-3(c), Estate Tax Regs. provides that attorney's fees paid by the estate are deductible as administrative expenses. Petitioner paid attorney's fees of $1,184.00 plus $66.00 in court and filing fees. Respondent has conceded that the items which make up the $66.00 figure are fully deductible on the Federal estate tax return and, therefore, are not in controversy. As to the remaining $1,184.00, respondent determined that only 75 percent of such amount is deductible by the estate because only that amount would be allowable under the laws of Texas, the state in which the estate was administered.Petitioner merely contends that the entire amount is deductible because it was paid on behalf of the estate. The question, therefore, is whether the entire amount of $1,184.00 would be allowed under the local law of Texas. Under Texas law the entire community estate is subject to being charged with administration expenses. Goggans v. Simmons, 319 S.W. 2d 442 *185 (Tex. Civ. App., 1958). Thus, some allocable portion of the administration expenses in question are chargeable to the surviving spouse's portion of the community property. United States v. Stapf, 375 U.S. 118 (1963), and Kathrine Schuhmacher, 8 T.C. 453 (1947). Respondent has allocated 75 percent of the administrative expenses arising from the legal fees paid by the estate to the decedent's portion of the community property. Petitioner has presented no evidence to contradict this allocation. We hold for the respondent on this issue. (4) The fourth issue is whether one-half of the Federal income taxes paid on a joint Federal income tax return filed on behalf of decedent and his surviving spouse for 1968 are deductible by the estate. Section 2053[5] allows an estate a deduction for claims against the estate that are allowable under local law. Section 20.2053-6(a) and (f), Estate Tax Regs. provide that income taxes are deductible as claims against the estate: "* * * if they are on income properly includible in an income tax return of the decedent for a period before his death. Taxes on income received after the decedent's death are not deductible." This Court has held that income *186 taxes allocable to a period prior to the decedent's death are deductible on Federal estate tax returns. Estate of William L. Nevin, 11 T.C. 59 (1948), and Estate of Laura Nelson Kirkwood, 23 B.T.A. 955 (1931). Petitioner has presented no evidence that any of the income on which the Federal income tax for 1968 was based was applicable to a period prior to decedent's death. On the contrary, Fred F. Adams, Jr. testified that the income from farming, which constituted the main portion of income reported on the joint return, was not collected until September or October. Since petitioner has failed to prove that any amount is chargeable as a claim against the estate, no deduction is allowable. See Estate of Harry Fried, 54 T.C. 805 (1970), affd. without discussion of this point 445 F. 2d 979 (C.A. 2, 1971), certiorari denied 404 U.S. 1016 (1972). We hold for respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated. ↩
2. In his report, Mr. Riddell listed nine comparable sales. At the trial, however, he stated that two of those sales listed were identical and one was therefore deleted. ↩
3. SEC. 2031. DEFINITION OF GROSS ESTATE. (a) General. - The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. ↩
4. SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES. (a) General Rule. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. ↩
5. See footnote number 4. ↩